S94A1079, S94X1128. MOORE et al. v. DIXON; and vice versa.
(452 SE2d 484)

Carley, Justice.

Harlon and Emma Harris are the previous owners of property upon which they operated a mobile home park and a "public water system" as defined in the Georgia Safe Drinking Water Act of 1977 (Act). OCGA § 12-5-172 (11). In compliance with the Act, the Harrises had been issued a permit to operate the water system. OCGA § 12-5-179. One of the conditions of the Harrises' permit was

> that the water service area will be limited to customers residing or conducting business on property under the permittee's ownership. Should the permittee desire to serve drinking water to customers on property owned by individuals other than the permittee, the permittee shall notify and submit to the [Environmental Protection] Division [(Division)] [of the Department of Natural Resources], for review and acceptance prior to service, a legal document guaranteeing continued maintenance and operation of the public water system.

When the Harrises sold a tract of their property to appellant-plaintiffs, the warranty deed given by the Harrises made no mention of a water supply for the tract conveyed to appellants. By a separate written agreement, however, the Harrises did contract to provide appellants water from the system which served the mobile home park. This agreement, which was never recorded, was in violation of the Harrises' permit to operate the water system, since, prior to entering into it, the Harrises had neither notified the Division nor submitted for the Division's review and acceptance a guarantee of continued maintenance and operation of the system.

Subsequently, the Harrises sold their remaining property and mobile home park to appellee-defendant. Prior to the sale, appellee was unaware of the Harrises' agreement with appellants, but, after the sale, she did enter into her own agreement with appellants al-

lowing them to continue to receive water from the system serving the mobile home park. Eventually, appellee obtained in her own name a permit to operate the public water system. Appellee's permit contained the same condition as had the Harrises' with regard to the supply of water to individuals who did not reside in the mobile home park. Appellee nevertheless continued to supply water to appellants without ever satisfying this condition of her permit.

In 1993, a dispute arose and appellee cut off appellants' access to the water system. Appellants brought suit for equitable relief, seeking to restrain appellee from interfering with their access to the water system. Appellee answered, asserting that any agreement affording appellants access to the water system was illegal and unenforceable insofar as such an agreement would be in violation of the Act. In addition, appellee counterclaimed for damages.

Cross-motions for summary judgment were filed as to appellants' main claim for equitable relief. After conducting a hearing, the trial court granted summary judgment in favor of appellee, concluding in its order that appellants' main claim was "frivolous per se," but nevertheless holding that no "damages" would be awarded to appellee. In Case No. S94A1079, appellants appeal and, in Case No. S94X1128, appellee cross-appeals.

### Case No. S94A1079

1. Appellants urge that appellee presently is bound to supply them water because the Harrises formerly had supplied them water.

Although the Harrises are appellants' and appellee's common grantors, there is in the Harrises' deed to appellants no covenant regarding the supply of water to appellants from any source located on the property which the Harrises thereafter sold to appellee. Thus, there was no covenant by the Harrises to supply appellants with water, which covenant would run with the land and bind appellee. *Lowry v. Norris Lake Shores Dev. Corp.*, 231 Ga. 547 (203 SE2d 169) (1974). The original unrecorded agreement between the Harrises and appellants regarding the supply of water was merely a personal contract which would not bind appellee in her capacity as the Harrises' grantee. Compare *Atlanta, Knoxville &c. R. Co. v. McKinney*, 124 Ga. 929 (53 SE 701) (1906).

Appellants contend that they nevertheless have a right to continued access to the water supply under a quasi-easement theory. However, appellants were never originally granted access to the Harrises' own private water system. Compare *Rowland v. Woods*, 259 Ga. 832 (388 SE2d 684) (1990). The water system was a "public" one which the Harrises legally could operate only by complying with the mandate of the Act. Since, under the Act, the Harrises had no authority

to grant appellants legal access to the public water system without prior approval of the Division, it follows that the Harrises had no authority to grant appellants a quasi-easement of access to the public water system without prior approval of the Division. See generally *Westbrook v. Comer*, 197 Ga. 433, 434 (4) (29 SE2d 574) (1944).

2. Appellants urge that summary judgment nevertheless was erroneously granted because, after purchasing the Harrises' property and mobile home park, appellee entered into her own agreement allowing them to continue to use the system as a source of water.

Legal operation of the "public water system" to which appellants seek access is dependent upon appellee's compliance with the Act. An underlying public policy of the Act is protection of "the health and welfare of all people in the State of Georgia." OCGA § 12-5-171. To effectuate this public policy, the Act imposes a requirement upon appellee to obtain a permit to operate the water system. OCGA § 12-5-179 (b). Appellee obtained the requisite permit. It is undisputed, however, that appellee's agreement with appellants, the requisite guarantee for which was never submitted to the Division for review and acceptance, would be in violation of her permit. As a violation of her permit, appellee's agreement with appellants would render her operation of the water system "unlawful" under the Act. OCGA § 12-5-179 (a). As the result of her "unlawful" operation of the water system, appellee's permit could be revoked, suspended, or modified. OCGA § 12-5-179 (e) (1). In addition, appellee also could incur civil penalties and be found guilty of a misdemeanor. OCGA §§ 12-5-192; 12-5-193.

It follows that the agreement which appellants seek to enforce against appellee is premised upon more than merely incidental illegality. If appellee were required to comply with the agreement, it would be impossible for her to avoid the commission of at least two "illegal" acts. Compare *Crooke v. Gilden*, 262 Ga. 122 (414 SE2d 645) (1992); *Shannondoah, Inc. v. Smith*, 140 Ga. App. 200 (230 SE2d 351) (1976). She would be required to supply water to appellants from a "public water system" without having obtained prior issuance of the necessary permit for her to do so and she also would be required to violate the conditions of the permit which she has been issued.

"It is the rule in this [s]tate, that, where a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are void and unenforceable. [Cits.]" [Cits.] . . . "Where a statute enacts, for the purpose

of securing a more effectual compliance with its requirements in respect to the licensing of certain occupations, that no one shall engage in or carry on any such occupation until he shall have obtained the license as provided by law, it is an express prohibition without more particular words. [Cit.]" [Cit.]

*Ga. Central Credit Union v. Weems,* 157 Ga. App. 439, 440 (1) (278 SE2d 88) (1981).

Since appellee's performance of the agreement would necessarily be illegal under the Act, appellants have no viable claim for enforcement of that agreement. *Wellmaker v. Roberts,* 213 Ga. 740, 742 (101 SE2d 712) (1958); *Jones v. Dinkins,* 209 Ga. 808, 809 (1) (76 SE2d 489) (1953). Appellee's past performance of the illegal agreement "will not amount to a ratification of the contract or an estoppel upon [her] so as to prevent [her] from contending that the contract was void. [Cit.]" *Horkan v. City of Moultrie,* 136 Ga. 561, 563 (2) (71 SE 785) (1911).

3. The trial court correctly granted summary judgment in favor of appellee as to appellants' claim for equitable relief. However, appellee's motion for frivolous appeal damages is denied.

## Case No. S94X1128

4. Appellee sought summary judgment and presented evidence as to appellants' main claim for equitable relief. As to her own counterclaim, however, appellee neither sought summary judgment nor presented any evidence which would authorize the grant of summary judgment in her favor. Accordingly, appellee's counterclaim remains pending and the trial court's refusal to award "damages" to appellee must be construed as merely the refusal to make an OCGA § 9-15-14 award in connection with the grant of summary judgment in favor of appellee on appellants' main claim.

Effective April 5, 1994, a motion for attorney fees and expenses may be made "at any time during the course of the action but not later than 45 days after the final disposition of the action." OCGA § 9-15-14 (e). However, appellee's motion predated April 5, 1994, and is, therefore, controlled by former OCGA § 9-15-14 (e). Under that former provision, a motion for attorney fees and expenses could only

be brought "within 45 days after the final disposition of the [underlying] action." Since the appellee's counterclaim remains pending in the trial court, there clearly has been no final disposition of the present action. It follows that the trial court was not authorized to enter an award of attorney fees pursuant to OCGA § 9-15-14.

*Abrahamsen v. McDonald's Corp.*, 197 Ga. App. 624, 625 (1) (398 SE2d 861) (1990). See also *Deavours v. Hog Mtn. Creations*, 207 Ga. App. 557, 558 (3) (428 SE2d 388) (1993), aff'd 263 Ga. 796 (439 SE2d 643) (1994).

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994.

*John E. Pirkle*, for appellants.
*John L. Gilmore*, for appellee.