A03A1744. REECE et al. v. SMITH et al.
(594 SE2d 654)

ANDREWS, Presiding Judge.

Jerry and Vicki Reece, who own a tract of undeveloped land bordering on a public road in Bartow County, sued for declaratory and injunctive relief after George Smith, an adjacent landowner, asserted the right to an easement across their land to the road. After a bench trial, the Reeces appeal from the trial court's order finding that Smith, Elihue Curtis, and Barbara and Richard Harris,[1] as owners of adjacent tracts of land separated from the road by the Reece property, have an easement across the Reece property for the purpose of accessing the public road.

---

[1] Curtis and the Harrises were subsequently added as defendants in the suit by court order.

For the reasons which follow, we conclude: (1) that the trial court correctly found the tracts owned by Smith and Curtis were land-locked and acquired the easement by implication of law for the necessity of providing reasonable access from the public road to the two tracts, and (2) that the trial court erred by ruling that the Harris tract, which was not landlocked, had the right to use the easement across the Reece property acquired by the Smith and Curtis tracts.

> At common law, where a grantor conveyed land without providing means of egress and ingress, and the situation of the land was such as made it otherwise inaccessible, there was an implication that he had unintentionally omitted to convey a means of access. This necessary implication entitled the land-locked grantee to a way out to whatever public or private road furnished access to the premises, in the laying out of which way due regard would be taken to the interest and convenience of the grantor. This rule is based upon the principle that when one grants a thing, he is deemed also to grant that within his ownership without which the grant itself will be of no effect. The rule as applied to private ways remains applicable in this State, and is embodied in [OCGA § 44-9-1], which provides, as one of the four methods of acquiring a "right of private way over another's land," that it "may arise . . . by implication of law when [the] right is necessary to the enjoyment of lands granted by the same owner." [Cits.] Such a way, necessary for the use and enjoyment of granted land enclosed by other land of the grantor, is an implied easement, which runs with the granted land, and passes not only to the immediate but subsequent grantees. [Cits.]

*Calhoun v. Ozburn*, 186 Ga. 569, 571 (198 SE 706) (1938). Even though a bona fide purchaser from the grantor without actual knowledge or constructive notice of the easement would take title free of the easement, and a purchaser may assume there is no easement except as shown of record or by visible evidence on the land itself, a purchaser is charged with notice of the easement where inspection of the land would have revealed physical facts sufficient to excite inquiry. *Burk v. Tyrrell*, 212 Ga. 239, 243 (91 SE2d 744) (1956). We apply these principles to the facts of the case. All of the tracts at issue were part of a larger undivided tract of land owned in the late 1800s by Archibald Miller, which tract was bounded on the north by Rock Fence Road, a public road. In 1873, Mr. Miller deeded the entire tract to his daughters, Jane Terry and Harriet Miller, who in 1896 deeded the southern part of the tract to the Georgia Bauxite &

Mining Company, and retained ownership of the northern part of the tract bordering on the road. There was evidence that the southern portion of the property acquired by Georgia Bauxite was landlocked without access to a public road, and that, in order to haul ore from the property in its mining business, Georgia Bauxite asserted an easement in its favor which became known as the "old mining road," which ran in a northerly direction across the property owned by Terry and Miller to Rock Fence Road. In 1925, Georgia Bauxite sold its property to Curtis's grandfather, who used the existing old mining road for access to conduct orchard and farming operations on the property until the late 1950s. In 1984, the Curtis family partitioned the tract, a portion being deeded to Elihue Curtis and the remaining portion deeded to Oteel Curtis Higginbotham, who subsequently deeded title to Smith in 1999. The partition and the deed from Higginbotham to Smith made reference to the property having an easement running northward along the old mining road to Rock Fence Road. The suit at issue was prompted when Smith started construction of a house on his property and made improvements to the old mining road to use as access to his property.

As to the northern portion of the original tract bordering Rock Fence Road, Terry and Miller divided this property in 1901, with Miller taking sole title to the northernmost part bordering on Rock Fence Road, and Terry taking sole ownership of the remaining southern part. Title to Miller's part bordering on Rock Fence Road was eventually obtained by the Reeces, and Terry's part was eventually deeded to the Harrises. It is undisputed by the Harrises that the portion of the original tract now owned by them had other access to a public road, and, therefore, unlike the Smith and Curtis tracts, was not landlocked for purposes of establishing an implied access easement.

In addition to the above evidence, the trial court heard testimony that the old mining road was the sole means of access to the Smith and Curtis tracts. Although there was evidence that in more recent years the old mining road had become overgrown and eroded in places because of reduced use and maintenance, and that it was passable only with a four-wheel drive vehicle prior to the improvements made by Smith, there was also evidence showing continued occasional use of the road, and that the road as established was at least 12 feet wide and remained a visible physical feature across the property at issue from the early 1900s to the present. There was also evidence that the path taken by the old mining road across the Reece property was dictated by topographical features of the land which rendered other access unworkable.

On the above facts, we find there was ample evidence that, pursuant to OCGA § 44-9-1, Smith and Curtis acquired an implied ease-

ment across the Reece property 12 feet in width along the path of the old mining road for the necessity of providing access from their property to Rock Fence Road.[2] *Calhoun*, 186 Ga. at 569; *Burk*, 212 Ga. at 243; OCGA § 9-11-52 (a). There was also sufficient evidence to support the trial court's conclusion that the easement had not been abandoned. *Jakobsen v. Colonial Pipeline Co.*, 260 Ga. 565, 567 (397 SE2d 435) (1990). We find no basis, however, for the trial court's conclusion that the Harrises acquired a right to use the old mining road easement across the Reece property solely because the path of the road from the Smith and Curtis tracts led across the Harris property before crossing the Reece property. To the contrary, the Harrises have not established the right to use the easement on the Reece property by any means set forth in OCGA § 44-9-1, and the Reeces are entitled to limit use of the easement across their property to those with a legal right of passage. Accordingly, the trial court's ruling that the Harrises acquired the right to use the easement across the Reece property is reversed. We also find no error in the trial court's ruling that the implied easement acquired by Smith and Curtis across the Reece property included the right to install within the path of the easement underground utilities necessary to the enjoyment of the land as a place of residence. The implied easement acquired under OCGA § 44-9-1 as necessary to the enjoyment of the land was not strictly limited to Georgia Bauxite's original use of the easement for ingress and egress, but is available for uses that are necessary to the reasonable enjoyment of any lawful development of the land, and that do not unreasonably burden the Reeces' rights as owners of the servient estate. See *Kiser v. Warner Robins Air Park Estates*, 237 Ga. 385, 386-387 (228 SE2d 795) (1976) (general grant of access easement created right in owner of dominant estate to use it for all reasonable purposes; owner of the servient estate retained "the right of full dominion and use of the land, except so far as a limitation thereof is essential to the reasonable enjoyment of the easement granted") (punctuation omitted); *Faulkner v. Ga. Power Co.*, 243 Ga. 649, 650 (256 SE2d 339) (1979) (easement not expressly limited by granting instrument was construed as available for a use reasonably related to the general purpose of the easement); *Richards v. Land Star Group*, 224 Wis.2d 829 (593 NW2d 103) (1999) (reasonable enjoyment of property included right to run underground utilities across implied access easement; there was no unreasonable burden on the servient estate); 25 AmJur2d, Easements & Licenses, § 92 (1996); Restatement (Third) of Property, § 2.15, comment d (1989); compare

---

[2] We need not decide whether there was sufficient evidence to support the trial court's determination that Smith and Curtis also acquired an easement along the old mining road by adverse possession.

*Lanier v. Burnette*, 245 Ga. App. 566, 569 (538 SE2d 476) (2000) (easement arising by express grant which was specifically limited to ingress and egress cannot be construed to include a utility easement). The utilities were necessary to the reasonable enjoyment of the land as a place of residence, and there was no evidence that they unreasonably burdened the Reeces' rights.

The Reeces contend the trial court erred by refusing to allow a map to be tendered into evidence as an exhibit. Even assuming the trial court should have admitted the map, any error was harmless because the facts demonstrated by the map itself were cumulative of the testimony given by a witness about the map. *Nalley Motor Trucks v. Cochran*, 200 Ga. App. 487, 488 (408 SE2d 501) (1991).

Finally, the Reeces argue that, because none of the defendants were entitled to the relief granted by the trial court, the trial court erred in denying their claim for expenses of litigation for the assertion of frivolous defenses under OCGA § 9-15-14. The trial court ruled that the Reeces had no claim for expenses because Smith, Curtis, and the Harrises had implied easements across the Reeces' land.[3] We find no error in the refusal to award expenses on the claims at issue against Smith and Curtis, who had valid easements, but in light of our conclusion that the Harrises were not entitled to use the easement, we vacate the trial court's denial of expenses of litigation against the Harrises, and remand the case to the trial court for a determination of whether in light of the evidence produced at trial the Reeces were entitled to the award of expenses of litigation against the Harrises. *State Soil & Water Conservation Comm. v. Stricklett*, 252 Ga. App. 430, 436 (555 SE2d 800) (2001).

*Judgment affirmed in part, reversed in part, and vacated in part and case remanded with directions. Barnes and Mikell, JJ., concur.*

DECIDED JANUARY 23, 2004 —
RECONSIDERATION DENIED FEBRUARY 11, 2004 ▮▮▮▮▮▮▮

*Cauthorn & Nohr, Thomas E. Cauthorn III, Melissa M. Nohr*, for appellants.

*Harry B. White, Thomas N. Brunt, Santhia L. Curtis*, for appellees.

---

[3] The trial court also noted that the issue of whether Smith improperly widened the easement (which the court found had a width of 12 feet) and could be liable for damages remained to be decided. See *Sloan v. Sarah Rhodes, LLC*, 274 Ga. 879 (560 SE2d 653) (2002). Accordingly, the trial court found that the Reeces could be entitled to the award of expenses of litigation if they later prevailed on that claim.