A08A0903. DE CASTRO et al. v. DURRELL et al.

(671 SE2d 244)

MIKELL, Judge.

This is a dispute over property that historically was used as a soccer field and is situated in the Oakdale Commons subdivision in DeKalb County. The subdivision consists of four adjoining lots, three of which are developed. Defendants/appellees, Amy Durrell and Russell Currey, own Lot 1, on which the disputed field is located, and Lot 2, which is undeveloped. Plaintiff/appellant David Oedel owns Lot 3 and plaintiffs/appellants John de Castro and Carolyn Cash own

---

Lot 4.[1] A 20-foot strip of the field spans the rear of Lots 3 and 4. At some point in 2004, appellees ceased allowing appellants to access Lot 1 and erected a "no trespassing" sign thereon. This litigation ensued.

Appellants filed a declaratory judgment action, claiming the right to access the disputed land for recreational purposes under theories of parol license, prescriptive easement, estoppel, and constructive trust. Appellants subsequently amended the petition to add counts alleging that the property was impliedly dedicated to the public use; quasi-easement; restrictive covenants (oral); estoppel; libel and slander of title; and that appellees' answer contained "groundless sworn denials," "causing substantial protraction of these proceedings." Appellants sought the declaration of an easement, an injunction, damages, and attorney fees. They moved for partial summary judgment on the quasi-easement claim, and appellees moved for summary judgment on all claims. The trial court granted appellees' motion and denied appellants' motion. We affirm for the reasons set forth below.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts warrant judgment as a matter of law.[2] The grant of a motion for summary judgment is reviewed de novo, and the evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmovant.[3]

So viewed, the record demonstrates the following relevant facts. The entire original tract, 3.9 acres, was owned by Jean and Henry Harsch from 1969-1988. The Harsches converted a horse pasture into a field that could be used for various activities, including soccer, and they allowed the Decatur-DeKalb YMCA to practice there. The Harsches sold their property to Thomas and Martha Shim in 1988, and the Shims allowed the soccer practice to continue. There were no recorded covenants or contractual restrictions upon the Shims' use of the property. Several years later, the Shims decided to develop the property as a subdivision and call it Oakdale Commons. Preliminary site plans, dated May 1995, showed a soccer field on Lot 1. Shortly thereafter, de Castro and Cash signed an agreement with the Shims to purchase Lot 4. The contract contained special stipulations, one of which stated that the Shims agreed to convey

---

[1] All plaintiffs sold their property during the pendency of this litigation; however, defendants do not argue that they lack standing to maintain this appeal.

[2] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Wynns v. White*, 273 Ga. App. 209, 210 (614 SE2d 830) (2005).

land of 20-foot width along the rear property line . . . subject, however, to an easement . . . for lawful recreational use only (including without limitation use as part of a soccer field). . . . The easement shall be for the use and benefit of Lots 1, 2, and 3 (on said Plat) and each of them, and shall run with the land. No structures or fences shall be erected on the 20' Strip nor shall any use of the 20' Strip interfere with its use as part of a soccer field.

This stipulation did not reference Lot 4. Before the sale, the Shims executed a "Declaration of Easement Agreement" ("Declaration"). The Declaration created a "Recreation Easement Area" upon a 20-foot strip of land spanning the rear of Lots 3 and 4 "for the benefit of the owner of Lot 1, and as a burden upon Lots 3 and 4 . . . for the conduct of recreational activities thereon, including, but not limited to use of said easement area as part of a soccer field." The Declaration further provided that

[t]he owner of Lot 1 shall bear the cost of managing, maintaining, operating, and improving the Recreation Easement Area. In the event that the owner of Lot 1 fails . . . to so maintain the Recreation Easement Area in a good and safe condition for the purposes intended, the Burdened Owner of the Lot not so maintained shall have the right to take such action as is necessary to put that portion of the Recreation Easement Area burdening its Lot in condition for the purposes intended, and such Burdened Owner shall have the right to collect from the owner of Lot 1 all reasonable costs incurred in connection therewith.

The Declaration could be amended only with the consent of all the lot owners in the form of a properly recorded written instrument. Appellants do not contend that the Declaration provided the owners of Lots 3 and 4 reciprocal rights to use Lot 1.

The Declaration was executed on November 17, 1995, and recorded on November 22, 1995. On that same date, the Shims conveyed Lot 4 to de Castro and Cash by a warranty deed that incorporates the Declaration. Thereafter, a "final" subdivision plat prepared for the Shims on July 19, 1996, shows an area labeled "Recreation Area Soccer Field" on Lot 1. However, no recreation easement area appears on Lot 1 on the plat that was approved by DeKalb County and recorded on September 19, 1996. The only recreation easement that appears on the plat is the 20-foot strip located on Lots 3 and 4. De Castro and Cash signed this plat. De Castro deposed that he signed the plat because Shim promised to use

an alternative method "to make sure the soccer field was preserved for recreational use." According to de Castro, Shim "described the soccer field as a recreational area for the use of all the land owners in the subdivision." The Shims' surveyor, John Roeser, deposed that the words "Recreation Area Soccer Field" had likely been erased before the plat was recorded, but he also stated that such erasures were a common practice in the preparation of plats.

Shim, who is a soccer coach, deposed that he originally planned to create a subdivision with a shared soccer field for his family and other lot owners. However, after encountering opposition from the Druid Hills Civic Association on certain other development issues, Shim and his wife decided to sell the property and move. At that point, Shim instructed Roeser to omit any reference to a common area.

Shortly after the final plat was recorded, appellees executed an agreement to purchase Lots 1 and 2 from the Shims. The contract contains certain special stipulations, including the Shims' agreement to provide an accurate legal description of the "house and soccer field," as well as a copy of all recorded easements. Appellees wrote a letter to Shim stating that their attorney had "raised concerns about the vagueness of the recreational easement and about our . . . responsibilities to maintain the easement in a safe manner." Appellees proposed to amend the Declaration to delete all references to a Recreation Easement Area and rename it a "buffer area within which no structure shall be placed." They also sought to delete their maintenance obligations with respect to the Recreation Easement Area. The Shims did not agree to the proposal. Appellees purchased the property subject to the Declaration and the final recorded plat on or about November 29, 1996. Oedel bought Lot 3 on or about June 18, 1997, and his warranty deed incorporates the final recorded plat and the Declaration.

Oedel testified that he began using the soccer field occasionally in 1997, but that he did not use it for organized soccer practice until 2000, at which time he secured appellees' permission. Oedel deposed that appellees had taken down the permanent soccer goals, so Oedel put up portable soccer goals for these practices, which he stored on his own property when soccer practice was over. Oedel, a professor of law, acknowledged that he could not rely upon the Declaration to establish reciprocal easement rights on Lot 1; however, he testified that a recreational easement could be implied from the words on the plat stating that "site improvements" and "parks" were to remain.

Durrell testified that appellants did not use her property without her permission; that she refused to allow Oedel to invite other soccer teams to practice there; and that she informed Oedel that he needed permission prior to using the field for his own team's

practice, because he did not always ask first. Currey testified that although he and Durrell told Oedel that they were willing to accommodate other children playing on their property, they "made it clear that the boundary lines had been defined by the legal descriptions in the plat." Currey deposed that, before purchasing Lot 1, de Castro had stated that he believed he had access rights to Lot 1; Currey disputed this claim but advised de Castro that the yard could be used with appellees' permission. De Castro deposed that appellees called him before they purchased Lot 1 to inquire as to his understanding of the recreational easements and the soccer field, and he explained that he believed that the disputed area would be a common area for recreational use.

1. In their first enumeration of error, appellants argue that they have conclusively established all of the elements necessary to prove the existence of a quasi-easement, so that the trial court erred in denying their motion for partial summary judgment on this issue. We disagree.

A quasi-easement is an easement implied from a prior or existing use.[4] Under Georgia law,

> [a] quasi-easement arises when the owner of an entire tract uses one part of the tract for the benefit of another and thereafter the tract is divided so that the [benefitted] parcel, quasi-dominant estate, is separated from the burdened parcel, quasi-servient estate. If the quasi-dominant estate receives a benefit that is apparent, continuous, permanent in nature, and is necessary and beneficial to the enjoyment of the quasi-dominant estate, then an easement is implied from the prior use.[5]

According to this definition, an easement implied from a preexisting use requires proof that "before the conveyance or transfer severing the unity of title, the common owner used part of the united parcel for the benefit of another part, and this use was apparent and obvious, continuous, and permanent."[6]

Appellants assert that a quasi-easement arose in 1995, when the Shims partitioned the property in such a way that appellants were benefitted as well as burdened. Appellants further complain that, absent access to the remainder of the recreation area, their 20-foot strips of land are useless as parts of a soccer field. But the focus of

---

[4] *Rowland v. Woods*, 259 Ga. 832, 833 (1) (388 SE2d 684) (1990).

[5] Id.

[6] *Granite Properties Ltd. Partnership v. Manns*, 117 Ill. 2d 425, 437 (512 NE2d 1230) (1987).

our inquiry is prior benefit. The Declaration, which was recorded in 1995, before partition, makes clear that any "soccer field" on Lot 1 was created for the benefit of Lot 1, and that recreational easements were created as burdens upon Lots 3 and 4. The only burden upon the owners of Lot 1 was the maintenance of the easement areas on Lots 3 and 4. No reciprocal benefit was created for the owners of Lots 3 and 4. Moreover, the special stipulation in the de Castro/Cash contract, establishing an easement for the benefit of Lot 3, was not recorded. The Declaration is incorporated into appellants' warranty deeds, so they purchased their properties with notice thereof.[7]

We further note that the concept of quasi-easement has been applied in Georgia only in instances where an implied easement is necessary to provide water or other essential services to one parcel of property after partition of the tract by the developer or other common owner.[8] We are loathe to expand this application in the manner urged by appellants. The trial court did not err in granting summary judgment to the appellees on this claim.

2. In their second enumerated error, appellants argue that the trial court erred in granting summary judgment to appellees on multiple claims. We disagree, finding no genuine issues of fact remaining on any of appellants' claims.

(a) *Implied easement; oral restrictive covenant; estoppel; public dedication.* Appellants' contentions regarding these theories are governed by similar principles of law; therefore, we address them together.

"A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created."[9] Citing this principle, appellants argue that, although the words "Recreation Area Soccer Field" were erased from the plat before it was recorded, the intention to create one can nevertheless be implied from various writings on the plat, when construed together with the Declaration. Appellants point to the word "Commons" on the plat, as well as the

---

[7] See *Commodity Credit Corp. v. Wells*, 188 Ga. 287, 291 (2) (3 SE2d 642) (1939) ("Where a deed is recorded, the record is not only constructive notice of the recorded deed and its contents, but it will also be notice of all other deeds and their contents to which reference is made in the recorded deed") (citations and punctuation omitted).

[8] See, e.g., *Moore v. Dixon*, 264 Ga. 797, 798-799 (1) (452 SE2d 484) (1994) (quasi-easement of access to water supply not authorized under facts); *Muscogee Mfg. Co. v. Eagle & Phenix Mills*, 126 Ga. 210, 215, 226 (54 SE 1028) (1906) (claim for apparent, or quasi, easement for water power from dam); *Enchanted Valley RV Park Resort v. Weese*, 241 Ga. App. 415, 424 (6) (526 SE2d 124) (1999) (water and sewer); *Rowland*, supra (water supply); *Glore v. Haggard*, 38 Ga. App. 278 (143 SE 780) (1928) (same).

[9] (Citation and punctuation omitted.) *Licker v. Harkleroad*, 252 Ga. App. 872, 875 (2) (a) (558 SE2d 31) (2001).

YALE LAW LIBRARY

statement on Lot 1, "residence garage, and other site improvements to remain." Appellants further note that the Declaration requires that the Recreation Area Easement be maintained as "part of a soccer field" and its use restricted to "the conduct of recreational activities."

We disagree with appellants' contention that an easement has arisen by implication in the disputed area on Lot 1. The only servitude in the case at bar is the *express* easement created by the Declaration. We apply the rules of contract construction when interpreting an express easement.[10] The cardinal rule of construction is to determine the parties' intent.[11] Neither parol evidence nor surrounding circumstances may be considered unless the Declaration is ambiguous.[12] Here, the easement created by the Declaration is the 20-foot strip of land spanning appellants' properties, Lots 3 and 4. The easement expressly burdens Lots 3 and 4, and benefits appellees' property, Lot 1. The only obligation placed upon the owner of Lot 1 is the maintenance of the express easement. The plat does not contradict the Declaration. As the recorded documents are unambiguous, we may not consider either parol evidence or surrounding circumstances to interpret them.[13] Thus, no easement may be implied in the disputed area.

This same principle applies to defeat appellants' claim of right to access the disputed area based on the Shims' unrecorded promises, which appellants characterize as an oral restrictive covenant. Appellants assert that Shim publicly marketed Oakdale Commons, both before and after de Castro and Cash purchased Lot 4, as including a recreational area to be shared by all lot owners. An affidavit submitted by the Shims' real estate agent supports this assertion. The agent averred that the Shims instructed her to describe all the lots as having access rights to a common soccer field in the subdivision, and that she did as instructed. Appellants argue that Shim is bound by these promises, and they cite *Raven v. Laurens*[14] in support of this proposition. This reliance is misplaced. In *Raven*, a property owner in a residential subdivision was enjoined from erecting a filling station on his lot because, even though there were no restrictions on his deed, there was a sign on his property restricting

[10] *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (1) (467 SE2d 510) (1996).

[11] Id.

[12] Id. (parol evidence); accord *4 G Properties, LLC v. GALS Real Estate*, 289 Ga. App. 315, 316 (656 SE2d 922) (2008) (parol evidence and surrounding circumstances).

[13] See *Northpark Assoc. No. 2 v. Homart Dev. Co.*, 262 Ga. 138, 141 (2) (414 SE2d 214) (1992) (developer's and county's subjective intent in recording a plat inadmissible where plat is unambiguous).

[14] 164 Ga. 868 (139 SE 546) (1927).

it to residential use.[15] In affirming the injunction, the Supreme Court relied on the facts that the owner, who was one of the first buyers in the subdivision, permitted the sign to remain on his lot until suit was filed, and purchased with the knowledge that his land was restricted to residential use; and that all subsequent lot owners bought in reliance on the sign.[16] By contrast in the case at bar, a recorded easement exists, and it is incorporated into appellants' warranty deeds. Neither the recorded easement nor the recorded plat created a recreational easement on Lot 1. Appellants purchased their lots with knowledge of the recorded documents. *Raven* is thus inapposite, and the trial court did not err in granting summary judgment on this claim.

Appellants additionally rely on the principle that

[w]here the owners of a tract of land subdivide it into lots, record a map or plat showing such lots, with designated streets and a public park, and sell lots with reference to such map or plat, the owners are presumed to have irrevocably dedicated said streets and parks for the use of all of the lot owners in the subdivision. The owners of lots in the subdivision have an easement in these public areas whether or not there has been an acceptance of the dedication by public authorities or the public generally.[17]

This is a restatement of the tenet that "[a] developer's sale of lots in a subdivision according to a recorded plat creates private easement rights in favor of purchasers in any area set apart for their use."[18] In the case at bar, the plat recorded for the Oakdale Commons subdivision does not show a common recreational area. Appellants' reliance on the above-cited theory is, therefore, misplaced as well.

Nor does the theory of estoppel apply. A common grantor may be estopped from denying the existence of an easement based upon on a recorded plat or deed showing or referencing the easement.[19] But

---

[15] Id. at 869.

[16] Id.

[17] (Citation and punctuation omitted.) *Smith v. Bruce*, 241 Ga. 133, 140-141 (1) (244 SE2d 559) (1978) (recreational use easement for beach lot owners). See also *Walker v. Duncan*, 236 Ga. 331, 332 (223 SE2d 675) (1976) (plat showed named park); *Stanfield v. Brewton*, 228 Ga. 92, 94-95 (1) (a) (184 SE2d 352) (1971) (plat showed public park); *Bishop Eddie Long Ministries v. Dillard*, 272 Ga. App. 894, 898 (1) (613 SE2d 673) (2005) (landowner who purchased from a developer pursuant to a subdivision plat showing a lake owned by the developer acquired an easement to the lake, with which neither the developer nor the lake's subsequent owner could interfere); *Patterson v. Powell*, 257 Ga. App. 336, 337 (571 SE2d 400) (2002) (easement rights to use subdivision lake were established by subdivision plat).

[18] (Citations omitted.) *Northpark Assoc.*, supra at 139 (1).

[19] See *Eardley v. McGreevy*, 279 Ga. 562, 564 (1) (615 SE2d 744) (2005).

appellants cannot rely on any unrecorded plat to claim estoppel. To rule otherwise "would unreasonably expand the Georgia law of implied easements, and would do great harm to the predictability of land titles."[20]

(b) *Prescriptive easement.* "The right of private way over another's land may arise ... from prescription by seven years' uninterrupted use through improved lands."[21] "Prescriptive rights are to be strictly construed, and the prescriber must give some notice, actual or constructive, to the landowner he or she intends to prescribe against."[22] "[T]he notice required is notice of the assertion of an adverse use, under claim of right, as distinguished from a mere permissive use."[23] Here, appellants admitted that they received permission from appellees to use the disputed area, and for this reason alone, appellants' claim to a prescriptive easement fails.

(c) *Parol license.*

> A parol license to use another's land is revocable at any time if its revocation does no harm to the person to whom it has been granted. A parol license is not revocable when the licensee has acted pursuant thereto and in so doing has incurred expense; in such case, it becomes an easement running with the land.[24]

Oedel asserts that he has demonstrated an irrevocable parol license to the disputed field by evidence that he made significant improvements to it. Oedel deposed that a drain line was unearthed on his lot during the excavation of the foundation for his home. The drain line, which ran from his lot through Lot 1, had to be either rerouted or plugged in order for his house to be built. Oedel testified that he chose to redirect it, at an expense of $2,600, because plugging it would flood the field on Lot 1. Oedel further claims that he irrigates the soccer field because he installed three sprinkler heads on his own property close to its boundary with Lot 1, and those heads spray water onto the field as well as onto his own lot. Oedel's claim of an irrevocable parol license fails as a matter of law, however. "If the enjoyment of the parol license must be preceded necessarily by the expenditure of money, and the grantee incurred expense in executing it, it becomes an agreement for a valuable consideration, and the

---

[20] Id.

[21] OCGA § 44-9-1.

[22] (Citation omitted.) *Keng v. Franklin*, 267 Ga. 472 (480 SE2d 25) (1997).

[23] *Eileen B. White & Assoc. v. Gunnells*, 263 Ga. 360, 362 (434 SE2d 477) (1993), citing *First Christian Church &c. v. Realty Investment Co.*, 180 Ga. 35, 43 (178 SE 303) (1935) (on motion for rehearing).

[24] OCGA § 44-9-4.

licensee a purchaser for value."[25] Thus, "Georgia courts have generally recognized the creation of an irrevocable easement only where the licensee's enjoyment of the license is necessarily preceded by some investment of funds which increases the value of the licensor's land to the licensor."[26] But "[t]he mere fact that a licensee erects improvements upon his own land and thereby incurs expense in the expectation of enjoying the license would not be such expenditure as would make the licensee a purchaser for value and the license irrevocable."[27] Oedel's action with regard to the drain line was essential to his enjoyment of his own property; he testified that he could not have built his house without either moving it or plugging it. While this action may have avoided damaging Lot 1, there is no evidence that rerouting the line *enhanced* the value of Lot 1. Thus, such action does not render the license to use the disputed area irrevocable.[28] The same reasoning applies to Oedel's sprinkler heads; they are improvements upon his own property, and there is no evidence that it was necessary to place them so as to spray onto the field in order for him to enjoy his license.[29]

Finally, Oedel deposed that he improved the field by treating it for fire ants beginning in 2000 or 2001. This maintenance, like, for example sweeping another's driveway,[30] is not the sort of repair as would render a license irrevocable.[31] The trial court did not err in granting summary judgment to the appellees on this claim.

(d) *Constructive trust.* "A constructive trust is a remedial device created by a court of equity in order to prevent unjust enrichment."[32] The claim can be supported by evidence of breach of a fiduciary duty.[33] Appellants assert that appellees breached a fiduciary duty of loyalty or care by seeking to amend the Declaration to delete their

---

[25] (Citations and punctuation omitted.) *Mathis v. Holcomb*, 215 Ga. 488-489 (1) (111 SE2d 50) (1959).

[26] (Citations omitted.) *Decker Car Wash v. BP Products North America*, 286 Ga. App. 263, 266 (649 SE2d 317) (2007).

[27] (Citations omitted.) *Cox v. Zucker*, 214 Ga. 44, 51 (3) (102 SE2d 580) (1958) (appellant's construction of building on his land and expenditure of $200 for repairing adjoining driveway held insufficient to render parol license irrevocable). Compare *Strozzo v. Coffee Bluff Marina &c.*, 250 Ga. App. 212, 215-216 (2) (550 SE2d 122) (2001) (licensee, which conducts marine rescue operations, erected gear shack, dock, and hoist, and later added as bulkhead and landscaping; license thus became an easement).

[28] *Cox*, supra.

[29] See id.

[30] *First Christian Church*, supra at 40.

[31] Id. at 41.

[32] (Citation and punctuation omitted.) *Hampton Ridge Homeowners Assn. v. Marett Properties*, 265 Ga. 655, 656 (2) (460 SE2d 790) (1995).

[33] Id.

maintenance obligations with respect to the recreational easement area on Lots 3 and 4. This claim is meritless, however, as the proposed amendment was never executed.

(e) *Libel and slander of title.* Appellants cite OCGA § 51-9-4 in support of their argument that the trial court erred in granting summary judgment against their claim of libel and slander of title. That statute, however, addresses the right of a title holder to bring an action for trespass. As this statute does not concern libel and slander of title, this alleged error presents nothing for review.

3. In their final enumeration of error, appellants argue that the trial court erred by denying their motion to strike and their third motion to compel, and by not drawing negative inferences based upon spoliation of evidence. In their motion to strike portions of appellees' verified answers, appellants claimed that appellees interposed spurious defenses for the purpose of delay by denying the characterization of the disputed area as a "soccer field," warranting the sanction of striking the relevant answers. The trial court denied the motion to strike, concluding that appellees had not engaged in false swearing.[34] We are powerless to address appellants' claim that the trial court erred in denying their motion because they cite no authority other than "Rule 11." We will not speculate upon which statute or court rule appellants rely. It is appellants' obligation to cite specific authority in support of their contention; as they have failed to do so, we deem this claim of error abandoned.[35]

As for the claim of a discovery violation, we note that in response to the appellants' first motion to compel, the trial court reopened discovery for an additional three months. In their third motion to compel, appellants complained that appellees produced redacted documents "concerning title to the soccer field." Appellees' counsel submitted a detailed list of 77 documents which were not produced under the theory that they were protected by attorney-client privilege or were not reasonably calculated to lead to the discovery of admissible evidence. The trial court denied the motion following a hearing. "The trial court's discretion in dealing with discovery matters is very broad, and this Court has stated on numerous occasions that it will not interfere with the exercise of that discretion absent a clear abuse."[36] Appellants have failed to establish any basis

---

[34] In its final order on summary judgment, the trial court found, as a matter of law, that appellees did not make "groundless sworn denials" in their answers because the plat does not show a "soccer field."

[35] Court of Appeals Rule 25 (c) (2).

[36] (Citation and punctuation omitted.) *Ostroff v. Coyner*, 187 Ga. App. 109, 117 (6) (369 SE2d 298) (1988).

by which the trial court abused its discretion; therefore, its order is affirmed.[37]

Finally, appellants argue that the trial court should have drawn negative inferences about the wrongful spoliation of evidence; specifically, the destruction of certain documents or records concerning the development of the Oakdale Commons subdivision.

> Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation. . . . Proof of spoliation raises a rebuttable presumption against the spoliator that the evidence favored the spoliator's opponent, a fact rendering summary judgment inappropriate.[38]

Although appellants argue in their brief that certain files generated at the time of the final plat erasures were destroyed, they have not explained how or why such evidence was necessary to the litigation. Thus, this claim fails.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 18, 2008 —
RECONSIDERATION DENIED DECEMBER 12, 2008 — 

*James, Bates, Pope & Spivey, Duke R. Groover, David G. Oedel*, for appellants.

*McClain & Merritt, William S. Sutton*, for appellees.

---

[37] *Strong v. Wachovia Bank &c.*, 215 Ga. App. 572 (1) (451 SE2d 524) (1994).

[38] (Citations and punctuation omitted.) *Baxley v. Hakiel Indus.*, 282 Ga. 312, 313 (647 SE2d 29) (2007).