**FIFTH DIVISION
MCFADDEN, P. J.,
RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 5, 2019**

# In the Court of Appeals of Georgia

A18A1598. EMSON INVESTMENT PROPERTIES, LLC v. JHJ
JODECO 65, LLC et al.

MARKLE, Judge.

In April 2014, JHJ Jodeco 65, LLC, and RCB Jodeco 35, LLC (collectively, "JHJ") bought a parcel of land that adjoins parcels owned by Emson Investment Properties, LLC ("Emson") in the Jodeco Road Village commercial development ("the development"). After Emson blocked access to a section of the parking lot, JHJ sued for declaratory judgment and injunctive relief, asserting rights to quasi-easements and implied easements across Emson's property for use of the common infrastructure of the development, including additional parking spaces, access for ingress and egress, and the water, sewer and storm water management systems. Following a bench trial, the trial court entered final judgment in JHJ's favor.

Emson now appeals, arguing that the trial court erred because (i) JHJ was not entitled to quasi-easements and implied easements as a matter of law; (ii) even if JHJ was so entitled, Emson was a bona fide purchaser for value, and thus took title to its property free and clear of such claims; and (iii) JHJ was not entitled to equitable relief. For the reasons set forth below, we agree and reverse the trial court's judgment.

> On an appeal from an entry of judgment following a bench trial, we apply a de novo standard of review to any questions of law decided by the trial court, but will defer to any factual findings made by that court if there is any evidence to sustain them. Nevertheless, if the trial court makes a finding of fact which is unsupported by the record, that finding cannot be upheld, and any judgment based upon such a finding must be reversed.

(Citation and punctuation omitted.) *Denapoli v. Owen*, 341 Ga. App. 517, 518 (801 SE2d 314) (2017).

Viewed in this light, the record reveals that in 2003, Gadson Woodall, as principal of Charrette Development Group, LLC ("CDG"), began assembling the individually owned parcels, in excess of eleven acres of land in total, that would become the development. In March 2005, CDG purchased the initial tract of land, comprising approximately seven acres fronting Jodeco Road in Henry County. This portion of the property, referred to as the "Miller tract," encompassed the front parcel on which retail buildings A and B were built, now owned by JHJ. The Miller tract

2

also included the rear parcel, as well as the land where retail building C would be built, both parcels now owned by Emson. The same day that CDG acquired the Miller tract, it conveyed title to the rear parcel, as well as the land eventually occupied by building C, to Jodeco Road Investments, LLC ("JRI"), another of Woodall's corporate entities.[1] Woodall testified that title to the development was divided among separate corporate entities[2] because he could not obtain a single source of financing for construction.

To complete the footprint of the development, in April 2005, CDG purchased the side tract, or the "Hulsey-Dukes-Cates tract," an assemblage of five separate tracts comprising approximately four acres. Emson now owns this tract.

Woodall testified that Henry County approved JRI's rezoning request for a single development with a common infrastructure, to be shared by the entire development. However, it is undisputed that no cross-easements, covenants, or restrictions regarding common use of the infrastructure were ever recorded.

---

[1]Woodall testified that he was 50 percent owner of JRI and the sole owner of CDG. Don Henry owned the other 50 percent of JRI.

[2]At one point, there were at least four different but interrelated corporate owners of individual tracts in the development.

With the initial loan secured by security deed on a portion of the property, construction began on buildings A and B on the front parcel in 2005. The rear parcel was also developed in this phase, including the detention pond, water and sewer lines, and other utility lines. Due to the high cost of the infrastructure improvements, CDG required additional financing to finish the interiors of buildings A and B, and it obtained another loan from yet a different lender secured by security deed on other tracts within the development. This pattern of dividing up the development property for financing purposes and obtaining loans from different lenders continued until no further financing could be secured. One by one, the loans went into default and, by 2009, all of the parcels secured under the loans were individually foreclosed and sold off.[3]

At an auction in June 2011, Emson purchased the tract where retail buildings C and D are located. Because there was inadequate parking for the retail buildings, Emson next purchased the side tract in July 2011. And in December 2011, Emson purchased the rear parcel of the development. In February 2013, in a separate action

---

[3] In October 2010, another of Woodall's corporate entities, Charrette Holdings, LLC reacquired title to buildings A and B on the front parcel. However, the loan secured on the property went into default, and the front parcel was again foreclosed on in November 2012.

not before this Court, Hamilton State Bank, the owner of the front parcel at the time, brought suit against Emson asserting claims for access to Emson's property for parking.[4]

In April 2014, JHJ purchased the front parcel from Hamilton State Bank, despite its principal, John Hardy Jones, being aware of the pending litigation with Emson and the inadequate parking situation. . Relying only on zoning records, Jones assumed that the parking lot in the rear parcel, which Emson owns, was burdened to accommodate additional parking for the businesses in retail buildings A and B on the front parcel. Months after JHJ purchased the front parcel, Emson installed a gate impeding access to the rear parcel and the parking area.

JHJ brought suit, seeking a declaration that it was entitled to quasi-easements and implied easements across Emson's property for use of the common infrastructure, including additional parking spaces, access for ingress and egress, and the water, sewer and storm water management systems. Emson answered and brought counterclaims for ejectment, trespass, nuisance, attorney fees and punitive damages.[5]

---

[4] Hamilton State Bank's action against Emson was still pending at the time of the bench trial in this suit.

[5] The counterclaims for ejectment and nuisance do not appear in the pleadings, but are raised in the pre-trial order.

The parties agreed to bifurcate the proceedings with JHJ's claims to be resolved by bench trial, and Emson's remaining counterclaims to be heard by a jury. Following a bench trial on JHJ's claims, the trial court found that JHJ had quasi-easements and implied easement across Emson's property, and issued declarations and permanent injunctions in JHJ's favor. This appeal followed.

1. As an initial matter, JHJ argues that this appeal is premature and subject to dismissal because Emson's counterclaims remain pending below. We disagree. Declaratory judgments, such as the trial court's judgment here, "shall have the force and effect of a final judgment or decree and be reviewable as such." OCGA § 9-4-2 (a). Regardless of whether the trial court's judgment resolved all of Emson's counterclaims, the trial court's order is directly appealable pursuant to the Declaratory Judgment Act. OCGA § 9-4-1 (a); *Bldg. Block Enterprises, LLC v. State Bank & Trust Co.*, 314 Ga. App. 147, 150 (1) (723 SE2d 467) (2012) (declaratory judgments are directly appealable "even if other issues remain pending below."); see also OCGA § 5-6-34 (a) (1). As such, this appeal is properly before us.

2. Emson argues that the trial court erred in concluding that JHJ was entitled to quasi-easement rights for water, sanitary sewer, and storm water services beneath Emson's property.[6] We agree.

> A quasi-easement arises when the owner of an entire tract uses one part of the tract for the benefit of another and thereafter the tract is divided so that the benefited parcel, quasi-dominant estate, is separated from the burdened parcel, quasi-servient estate. If the quasi-dominant estate receives a benefit that is apparent, continuous, permanent in nature, and is necessary and beneficial to the enjoyment of the quasi-dominant estate, then an easement is implied from the prior use.

*Rowland v. Woods*, 259 Ga. 832, 833 (1) (388 SE2d 684) (1990). Put another way, a quasi-easement "requires proof that before the conveyance or transfer severing the unity of title, the common owner used part of the united parcel for the benefit of another part, and this use was apparent and obvious, continuous, and permanent." (Citation and punctuation omitted.) *De Castro v. Durrell*, 295 Ga. App. 194, 198 (1) (671 SE2d 244) (2008). Thus, to claim quasi-easements to the development's

---

[6] The proposed Order presented by JHJ and entered by the trial court appears to conflate quasi-easements and implied easements. Although our case law has treated quasi-easements as a category of implied easement, we have been reluctant to extend the concept of a quasi-easement beyond "instances where an implied easement is necessary to provide water or other essential services to one parcel of property after partition of the tract by the developer or other common owner." (Footnote omitted.) *De Castro v. Durrell*, 295 Ga. App. 194, 199 (1) (671 SE2d 244) (2008). Thus, it is unlikely that a quasi-easement would pertain to parking area access or to ingress and egress in general.

infrastructure, JHJ must first show there was unity of title, i.e., the development had a single, common owner. See *Rowland*, 259 Ga. at 833 (1); *De Castro*, 295 Ga. App. at 198 (1).

But JHJ has not met its burden on this record. Woodall testified that the development was an assemblage of individual parcels acquired by CDG. Notably, prior to CDG's acquisition of the Hulsey-Dukes-Cates tract, CDG transferred title to the rear parcel, as well as the land eventually occupied by building C, to JRI. Although Woodall was the sole owner of CDG and 50 percent owner of JRI, "corporations are separate legal entities from their shareholders, officers, directors, and employees. . . . This is so even in the situation in which a corporation is owned solely by one person." *Dept. of Transp. v. McMeans*, 294 Ga. 436, 437 (754 SE2d 61) (2014). Therefore, we cannot construe unity of title from the chain of conveyances here; rather, we conclude there was no common owner of the entire development from the outset.[7] And, for this reason, JHJ cannot establish quasi-easement rights to

---

[7] To the extent the trial court based its finding of unity of title on Emson's admission in its initial pleading that the entire property was owned by a single entity, this basis was in error. Pursuant to OCGA 9-11-15 (b), "at trial the pleadings are deemed automatically amended to conform to the evidence." *Zambetti v. Cheeley Investments, L.P.*, 343 Ga. App. 637, 642 (1) (a) (808 SE2d 41) (2017). As set forth above, the trial court's finding of unity of title is not supported by the evidence of record.

the remainder of the development. The trial court's finding to the contrary was in error.

3. Emson next argues that the trial court erred in finding that JHJ was entitled to implied easements over and across Emson's property because JHJ's property is not landlocked, and there is no necessity nor unity of title. We agree.

"An implied easement may arise when the right is necessary to the enjoyment of lands granted by the same owner." (Citation and punctuation omitted.) *Eardley v. McGreevy*, 279 Ga. 562, 563 (1) (615 SE2d 744) (2005); OCGA § 44-9-1. "However, grants by implication are not favored." (Citation and punctuation omitted.) *Albenberg v. Szalay*, 332 Ga. App. 665, 668 (4) (774 SE2d 730) (2015). And "an implied easement of necessity . . . never exists where [an entity] can get to [its] own property through [its] own land, however inconvenient the way to [its] own land may be." (Citation omitted.) Id. at 669 (4).

Thus, for an implied easement to exist, (1) the dominant estate must be landlocked, (2) the easement must be necessary, and (3) the servient and dominant estates must have previously comprised a single parcel under the same owner. See generally OCGA § 44-9-1; *Eardley*, 279 Ga. at 563 (1); *Albenberg*, 332 Ga. App. at 669 (4).

Here, it is undisputed that JHJ's property is not landlocked, but fronts along Jodeco Road. Accordingly, any claim for an implied easement fails.[8] Moreover, as addressed in Division 2, supra, there was no unity of title to the development. For these reasons, we conclude that JHJ was not entitled to implied easements over Emson's property, and the trial court erred in so finding.

4. Because JHJ was not entitled to implied and quasi-easements, we do not reach Emson's argument that it was a bona fide purchaser for value without notice of such rights.

5. Finally, Emson argues that the rules of equity preclude the relief granted to JHJ by the trial court. We agree.

In Division 2 and 3 of this opinion, we found that JHJ has no easements to Emson's property as a matter of law. "[T]he first maxim of equity is that equity follows the law. . . . Where rights are defined and established by existing legal

---

[8] Appellees rely on *Reece v. Smith*, 265 Ga. App. 497 (594 SE2d 654) (2004), in support of their argument that they have implied easements both above ground and underground, such as to the sewer and waterlines. We find their reliance misplaced. In *Reece*, unlike here, we first found that there were implied easements granting ingress and egress across a servient estate where the dominant estates were landlocked, and then held that those easements "included the right to install *within the path of the easement* underground utilities necessary to the enjoyment of the land as a place of residence." (Emphasis supplied.) *Reece*, 265 Ga. App. at 500.

principles, they may not be changed or unsettled in equity." (Citation omitted.) *Hopkins v. Virginia Highland Assocs., L.P.*, 247 Ga. App. 243, 249 (1) (541 SE2d 386) (2000). Here, in addition to issuing declaratory judgments, the trial court issued permanent injunctions that included granting access to JHJ over Emson's property for parking and deliveries, as well as rights to the stormwater and sewer systems. However, because the court's declarations were in error, and JHJ has no legal right of access to Emson's property, there is no basis for the scope of the injunctive relief. Accordingly, we reverse the trial court's judgment.

*Judgment reversed. McFadden, P. J., and Rickman, J., concur*.

11