**THIRD DIVISION
MIKELL, P. J.,
MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**June 25, 2012**

# In the Court of Appeals of Georgia

A12A0545, A12A0546. CAMP CHEROKEE, INC. v. MARINA
LANE, LLC et al.; and vice versa.

MILLER, Judge.

Camp Cherokee, Inc. filed this suit for nuisance and trespass against Marina Lane, LLC, Clara Ruth Brooks, and Jerry Kyle (collectively "Marina Lane") after Marina Lane built a dock on Camp Cherokee's property at Lake Burton in Rabun County, Georgia. The case was referred to an auditor pursuant to OCGA § 9-7-1 et seq. Following an evidentiary hearing, the auditor issued a report with findings in favor of Marina Lane. Camp Cherokee filed its exceptions to the auditor's report pursuant to OCGA § 9-7-14 (a). The trial court reversed the auditor's conclusion that Marina Lane had a right to erect the dock. The trial court ruled as a matter of law that the erection of the dock on Camp Cherokee's property constituted a nuisance and

trespass; ordered that the dock be removed; and, found that the issue of damages would be submitted to the jury. Although the trial court initially ruled that Camp Cherokee was also entitled to attorney fees under OCGA § 13-6-11 and punitive damages under OCGA § 51-12-5.1 (b), it later reconsidered its ruling and dismissed those claims.

We granted the parties' respective applications for interlocutory appeal to review the trial court's rulings. In Case No. A12A0545, Camp Cherokee contends that the trial court erred in dismissing its claims for attorney fees and punitive damages. In Case No. A12A0546, Marina Lane contends that the trial court erred in setting aside the auditor's finding that they had a legal right to erect and maintain the dock; erred in ruling that the auditor's report could not be submitted to the jury; and erred in ruling that Camp Cherokee would be allowed to present new evidence to the jury as to its damages. For the reasons that follow, we affirm the trial court's rulings in Case No. A12A0546. However, we conclude that there was some evidence that would authorize an award of attorney fees and punitive damages; therefore, we reverse the trial court's dismissal of those claims in Case No. A12A0545.

The record evidence shows that Camp Cherokee, a family owned corporation, owns certain property, including the land under the lake ("the lake bed") and the

2

shoreline, surrounding Lake Barton in Rabun County ("the property"). Camp Cherokee's property was subject to a perpetual easement granted to Georgia Power Company, which allowed Georgia Power to flow and back water upon the property extending up to the 1866-foot contour line. Notwithstanding Georgia Power's easement, Camp Cherokee retained fee simple ownership in the lake bed and shoreline.

In the 1920's, Camp Cherokee created the Cherokee Camp subdivision. Camp Cherokee retained ownership of the property, and conveyed to other individuals internal land lots in Block 11 that neither fronted nor abutted the lake. Brooks, Kyle, and the members of Marina Lane acquired ownership of lots in Block 11 of the subdivision. The chain of title and deeds of record conveying the subdivision lots in Block 11 did not contain express easements for access to the subject lake property or to the lake.

In May of 2007, Marina Lane approached Georgia Power to request a permit to erect a floating dock in the waters of the lake. Upon learning of Marina Lane's efforts to obtain dock permits on the lake, Camp Cherokee retained counsel to protect their property interest. In October of 2007, and again in November of 2007, Marina Lane was advised that Camp Cherokee owned the property and that it had not given

permission for the proposed erection of a dock on its property. In January of 2008, Georgia Power's counsel advised Marina Lane that it did not own fee simple title to the land under the lake, and that Marina Lane was required to deal with the owner of the lake bed.

In March of 2008, Georgia Power issued a license to Marina Lane for the erection of a dock within Georgia Power's easement on the lake. The license expressly provided that "[Georgia Power] has not and does not now extend any invitation, either expressed or implied, to use said lake or lands in, on and adjacent thereto . . . for the erection of . . . docks, boat ramps, or other structures[.]" The license further provided that Marina Lane did not and would not claim any property rights to the lake or the lands "in, on and adjacent to the [l]ake[.]"

In April of 2008, the property owners officially formed Marina Lane, LLC for the sole purpose of erecting and maintaining the dock on the lake. In July of 2008, they obtained a county building permit to erect a floating dock, contending that the property owner was the "Cherokee Subdivision." Marina Lane also obtained a construction permit from Georgia Power for a floating dock.

On September 16, 2008, Marina Lane erected the dock on the lake. Kyle and Brooks acknowledged that Camp Cherokee owned the lake bed, and that the dock

4

was not allowed to touch the lake bed. Kyle and Brooks also testified that they did not request Camp Cherokee's permission to erect the dock because they knew that Camp Cherokee would reject their request. The evidence and photographs nevertheless established that the dock had been erected on and attached to Camp Cherokee's lake bed and property.

On the same day that the dock was erected, Camp Cherokee's counsel sent Marina Lane letters again notifying it that Camp Cherokee owned both the shoreline and the lake bed, that Camp Cherokee had not given permission for the erection and attachment of a dock on the property, and that the dock's erection would constitute a trespass on the property. Camp Cherokee's counsel further directed Marina Lane to remove the poles that attached the dock onto the property, and advised that Camp Cherokee would pursue a civil action and seek attorney fees and punitive damages if the removal was not timely completed.

Marina Lane failed to take any action to remove the poles and the dock that were attached to Camp Cherokee's property. The instant lawsuit ensued.

*Case No. A12A0546*

1. Marina Lane contends that the trial court erred in reversing the auditor's ruling that it had legal rights to access the lake and to maintain the dock. We disagree.

5

The trial court was not obligated to accept the auditor's erroneous legal conclusions. See OCGA § 9-7-16 ("Exceptions of law [from an auditor's report] shall be for the exclusive consideration of the judge."); see, e.g., *Eardley v. McGreevy*, 279 Ga. 562, 564-565 (2) (615 SE2d 744) (2005) (ruling that in submitting a land title case to a special master, the trial court does not cede jurisdiction to render a final decision and is not obligated to accept a special master's erroneous legal conclusion). Based upon the evidence presented in this case, the trial court was authorized to reject the auditor's erroneous legal rulings.

It is undisputed that the deeds conveying the subdivision lots to the Marina Lane owners did not contain express easements to access the lake. Marina Lane nevertheless argues that it acquired an irrevocable implied easement for lake access since Camp Cherokee had sold the subdivision lots pursuant to a recorded subdivision plat that showed the lake and since had been a newspaper advertisement for an auction sale of residence and business lots at the lake with a representation that "[e]ach lot will carry [b]oating, [s]wimming and [f]ishing [p]rivilege." In this regard, Marina Lane relies upon the legal principles set forth in *Walker v. Duncan*, 236 Ga. 331, 332 (223 SE2d 675) (1976), stating that

6

[i]t is well-established that where a developer sells lots according to a recorded plat, the grantees acquire an easement in any areas set apart for their use. An easement acquired in this manner is considered an express grant, and is an irrevocable property right. The rationale is that the grantees of the property have given consideration for its enhanced value in the increased price of their lots.

(Citations and punctuation omitted.) Id. Applying this principle, the Georgia Supreme Court has previously ruled that owners of lakefront property can establish an irrevocable easement in the lake upon presenting evidence that "they purchased their lots according to a subdivision plat which had a lake area designated on it and paid more for their lakefront lots than the purchase price for non-lakefront lots[.]" (Citations and punctuation omitted.) *Forsyth County v. Martin*, 279 Ga. 215, 217 (1) (610 SE2d 512) (2005).

Here, the evidence fails to establish Marina Lane's claims under this principle. As an initial matter, Marina Lane has failed to point to any evidence showing that it paid a premium or increased price for their lots based upon their proximity to the lake. In addition, the recorded plat of the subdivision reflects that Marina Lane's lots in Block 11 were not adjacent to the lake. Cf *Higgins v. Odom*, 246 Ga. 309, 309-310 (271 SE2d 211) (1980) (ruling that neighboring property owner had an easement in

7

the lake since she purchased her lot pursuant to a subdivision plat showing the lake, and paid more for her lot adjacent the lake). The evidence and recorded plat also fail to reflect that the lake was specifically set aside as a common area for the subdivision owners' use. See *De Castro v. Durrell*, 295 Ga. App. 194, 201-202 (2) (a) (671 SE2d 244) (2008) (ruling that the subdivision lot owners did not have an implied easement or easement by estoppel to a soccer field located in the subdivision since the recorded subdivision plat did not reflect that the field was a common recreational area).

The newspaper advertisement that Marina Lane relies upon was for lots that "front the [l]ake adjoining the Government Reservation and Power Company's property[.]" The plats revealed that Marina Lane's subdivision lots in Block 11 did not adjoin the properties referenced in the advertisement. The plats showed instead that the referenced properties were adjoined by other lots in different sections or blocks. As such, the evidence did not reflect that the advertisement applied to Marina Lane's lots. There likewise was no evidence that the Marina Lane owners viewed or relied upon the newspaper advertisement when they purchased their lots. In the absence of evidence supporting Marina Lane's claim to an easement under this principle, the trial court's ruling that Marina Lane did not have a legal right to lake access was proper as a matter of law. See, e.g., *Peck v. Lanier Golf Club*, __ Ga. App.

8

__, * 8-9 (a) (Case No. A11A2100, decided Mar. 8, 2012) (property owner in a subdivision failed to show that he had acquired an implied easement in an adjacent golf course as a matter of law).

Marina Lane further argues that it acquired an irrevocable license to access the lake and erect a dock pursuant to OCGA § 44-9-4. That statute pertinently provides that "[a] parol license is not revocable when the licensee has acted pursuant thereto and in so doing has incurred expense; in such case, it becomes an easement running with the land." (Punctuation omitted.) OCGA § 44-9-4. In this regard, Marina Lane relies upon evidence that Camp Cherokee had previously allowed a property owner in the subdivision to erect and maintain a dock on its property. Nevertheless, the evidence was undisputed that the prior dock fell into disrepair and was no longer in existence. Significantly, it also was undisputed that the dock erected by Marina Lane was not in the same location as the prior dock. Consequently, even assuming that the prior dock created an irrevocable license in favor of the prior property owner, the evidence failed to show that Marina Lane's dock fell within the property covered by the alleged license. Since Marina Lane's claims were not supported by the evidence, the trial court's ruling was authorized.

9

2. Marina Lane next argues that the trial court erred in ruling that the auditor's report could not be presented to the jury. Again, we discern no reversible error.

OCGA § 9-7-8 mandates that the auditor shall file a report that "shall clearly and separately state all rulings made by him, classify and state his findings, and report his conclusions upon the law and facts." An auditor's report that commingles findings of fact and conclusions of law does not comply with the statute and places a party desiring to except to the findings at a disadvantage when the whole findings and conclusions are read to the jury. See *Exchange Natl. Bank v. McDonald*, 179 Ga. 464, 469-470 (176 SE 18) (1934); *Southern Pine Co. v. Dickey*, 136 Ga. 662, 663 (a) (71 SE 1110) (1911). It has been acknowledged that if the commingled factual findings, arguments, and legal conclusions are read during the jury trial, the jury "might be unduly influenced by the matters of argument and law to the prejudice of the excepting party." (Citation and punctuation omitted.) *Exchange Natl. Bank*, supra, 179 Ga. at 470. When an auditor's report is non-compliant, the trial judge may recommit the report for correction. See OCGA § 9-7-13 (a).

Here, it is undisputed that the auditor's report erroneously commingled the factual findings and legal conclusions. Camp Cherokee filed exceptions to the report, as well as a motion to recommit the auditor's report for the separation of the

10

conclusions of law from the findings of fact. In ruling upon these matters, the trial court noted that at a status conference, the parties had stipulated to a procedure in which the trial court would not recommit the auditor's report, but would instead proceed in ruling upon the exceptions matter by considering certain statements as conclusions of law rather than factual findings.

Since the auditor's non-compliant report would impose a disadvantage and prejudice Camp Cherokee in its efforts to obtain a fair resolution of its exceptions before a jury, and since the parties stipulated to a procedure in which the case would be decided without recommitting the auditor's report for correction, the trial court did not err in refusing to present the noncompliant auditor's report to the jury. "It is a well-settled appellate rule that one cannot complain about a ruling of the trial court which the party's own trial tactics or conduct procured or aided in causing." *Wallace v. Swift Spinning Mills*, 236 Ga. App. 613, 617 (2) (511 SE2d 904) (1999). "[A party] cannot now complain of a result he aided in causing, because induced error is not an appropriate basis for claiming prejudice." (Citations and punctuation omitted.) *Shaver v. Kawasaki Motors Corp.*, 273 Ga. App. 140, 141-142 (614 SE2d 240) (2005).

3. Marina Lane further contends that the trial court erred in granting Camp Cherokee's request to present new evidence as to its damages. We disagree.

In ruling upon Camp Cherokee's exceptions to the auditor's report, the trial court concluded that Camp Cherokee was entitled to damages from the date of the erection of the dock through the date the dock was removed. It was undisputed that at the time of the auditor's proceedings in November 2009, the dock was still standing. It is likewise undisputed that Marina Lane removed the dock after the trial court entered its ruling on the exceptions in May 2010. Camp Cherokee, in turn, moved to introduce new evidence of its damages covering the period of time after the auditor's proceedings through the subsequent removal of the dock, as authorized by the trial court's ruling on the measure of damages. The trial court granted Camp Cherokee's motion to present this new evidence.

OCGA § 9-7-19 (a) provides that in proceedings on exceptions to an auditor's report, "[n]o new testimony shall be considered, except in those cases where, according to the principles of law, a new trial would be granted for newly discovered evidence." Since the evidence of the damages incurred after the auditor's proceedings amounted to newly discovered evidence, the trial court's decision granting Camp Cherokee's motion to present the new evidence was proper.

*Case No. A12A0545*

12

4. Camp Cherokee challenges the trial court's dismissal of its claims for attorney fees and expenses of litigation under OCGA § 13-6-11 and for punitive damages under OCGA § 51-12-5.1, arguing that the claims should be submitted to a jury. We agree and reverse the trial court's rulings on both grounds.

(a) Under OCGA § 13-6-11, "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Generally, the question of whether a defendant has acted in bad faith must be determined by the jury based upon its consideration of the facts and circumstances in the case. See *Tyler v. Lincoln*, 272 Ga. 118, 122 (2) (527 SE2d 180) (2000). The commission of an intentional tort invokes a species of bad faith that authorizes the recovery of expenses of litigation and attorney fees. Id. A trespass is an intentional act. Id. at 120 (1). The failure to ameliorate a continuing trespass and nuisance may amount to intentional acts authorizing the jury to consider an award of attorney fees. Id. at 120 (1), 122 (2); see also *Merlino v. City of Atlanta*, 283 Ga. 186, 190-191 (4) (657 SE2d 859) (2008); *Paine v. Nations*, 283 Ga. App. 167, 171 (2) (d) (641 SE2d 180) (2006). Where there is some evidence from which a jury could

13

determine that the defendant acted in bad faith during the transaction out of which the lawsuit arose, the claim for attorney fees should be submitted to the jury for resolution. See *Merlino*, supra, 283 Ga. at 191 (4).

Here, the evidence showed that despite having prior knowledge that the lake bed was owned by Camp Cherokee and that Camp Cherokee had not granted permission for the dock to be attached to their lake bed and property, Marina Lane, Kyle, and Brooks nevertheless proceeded to build and attach the dock to Camp Cherokee's lake bed. Notably, Kyle and Brooks both testified that they did not request Camp Cherokee's permission to erect the dock because they knew that Camp Cherokee would reject their request. "Because this constitutes some evidence from which the jury could determine that [Marina Lane, Kyle, and Brooks] acted in bad faith during the [erection of the dock] out of which the lawsuit arose, we must reverse the trial court's grant of summary judgment . . . on [Camp Cherokee's] claim for attorney fees." (Citation and punctuation omitted.) *Merlino*, supra, 283 Ga. at 191 (4).

The trial court ruled that the evidence did not rise to the level of bad faith since Marina Lane exercised due diligence in obtaining and relying upon the license and permit granted by Georgia Power prior to erecting the dock. Significantly, however, the evidence established that Georgia Power had repeatedly advised Marina Lane that

14

it did not own the lake bed, and that Marina Lane was required to deal with the lake bed owner, Camp Cherokee, in order to erect the dock onto the lake bed. In addition, Camp Cherokee's counsel wrote letters forwarded to Marina Lane's members, Kyle, and Brooks, which confirmed that Camp Cherokee owned the lake bed and had not given permission for the dock's erection onto its property. Notwithstanding this advance notice, Marina Lane erected the dock onto Camp Cherokee's lake bed. Although Marina Lane knew that Camp Cherokee opposed having the dock on their property, Marina Lane took no action to remove it thereafter. This evidence presented a jury question as to whether Marina Lane, Kyle, and Brooks had engaged in wilful acts exhibiting an entire want of care and indifference as to the property rights of Camp Cherokee. See *LN West Paces Ferry Assocs. v. McDonald*, 306 Ga. App. 641, 644-645 (1) (a), (b) (703 SE2d 85) (2010) (evidence established intentional trespass and authorized attorney fees and punitive damages where the defendant property owner directed a contractor to tie his plumbing into the plaintiff neighbor's manhole with knowledge that he did not have the plaintiff's permission or an easement authorizing the intrusion onto the plaintiff's property).

(b) Punitive damages may be awarded in accordance with OCGA § 51-12-5.1 (b) when there is "clear and convincing evidence that the defendant's actions showed

15

willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." As set forth in Division 4 (a) above, the evidence presented a material question as to whether the trespass and nuisance of Marina Lane, Kyle, and Brooks onto Camp Cherokee's property was knowing, wilful, and a conscious indifference to the property rights of Camp Cherokee. It thus follows that the issue regarding Camp Cherokee's claim for punitive damages was required to be submitted to the jury. See *Tyler*, supra, 272 Ga. at 121-122 (1) (ruling that material questions of fact existed that would allow a jury to consider a claim for punitive damages where the developers knew of the unauthorized trespass and nuisance, but took no action to ameliorate it); *LN West Paces Ferry Assocs.*, supra, 306 Ga. App. at 645 (1) (a) (ruling that the jury was entitled to award punitive damages based upon evidence that the defendant was informed that his entry onto the plaintiff neighbor's property would constitute an unlawful trespass, but defendant told his contractor to "do it anyway") (punctuation omitted). The trial court therefore erred in ruling that the punitive damages issue could not be presented to the jury.

*Judgment reversed in Case No. A12A0545. Judgment affirmed in Case No. A12A0546. Mikell, P. J., and Blackwell, J., concur.*

16