**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**July 2, 2021**

# In the Court of Appeals of Georgia

A21A0329. WS CE RESORT OWNER, LLC v. HOLLAND et al.

MILLER, Presiding Judge.

This case involves a dispute between the operator of a golf course and the owners of property in a residential community regarding whether the property owners acquired an implied easement for the golf course. WS CE Resort Owner, LLC ("CE Owner"), the operator of the golf course, appeals from the trial court's denial of its motion for summary judgment and the grant of summary judgment and a permanent injunction to property owners Evelyn McCarthy and Thomas and Connie Holland ("the Plaintiffs"). On appeal, CE Owner argues that (1) the trial court erred in determining that the Plaintiffs acquired an implied easement in the golf course; (2) the trial court's order is too vague to be enforceable; and (3) the trial court erred in awarding attorney fees to the Plaintiffs. We conclude that, although the trial court

properly determined that an implied easement exists in the property and that it did not err by issuing an injunction, the trial court erred by granting the Plaintiffs summary judgment on their claim for attorney fees. We therefore affirm in part and reverse in part.

> To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to a judgment as a matter of law. When a plaintiff moves for summary judgment, he has the burden of establishing the absence or non-existence of any defense raised by the defendant. When a defendant moves for summary judgment, he has the burden of either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate.

(Citation omitted.) *Plantation at Bay Creek Homeowners Assn., Inc. v. Glasier*, 349 Ga. App. 203, 204 (825 SE2d 542) (2019).

So viewed, the record shows that in the early 1990s, Fountainhead Development Inc. ("Fountainhead") owned and developed Chateau Elan, a "Planned Resort & Residential Community" in Braselton, Georgia. The community featured

a winery, a hotel, three golf courses, an equestrian center, a tennis center, a conference center, and residential areas. The marketing materials for Chateau Elan stated that the community was developed in a method that was "backwards" from most resort communities because the golf courses, spa, tennis center, hotel, and conference center were developed before the residential areas. One of the residential areas, The Manor Homes, was situated next to one of the golf courses, the Par 3 Golf Course (hereinafter "Par 3 Course"), which was located behind the Manor Homes gate and featured homesites overlooking the golf course.[1] Fountainhead determined the pricing for each lot at The Manor Homes and provided all of the marketing materials to Chateau Elan Realty, which was the brokerage firm that listed and sold lots for Fountainhead. The Manor Homes subdivision had site premiums for some of the lots in varying amounts up to $15,000 depending on the lot's view and proximity to the Par 3 Course.[2] The plat for The Manor Homes subdivision[3] was recorded in the

---

[1] At oral argument, the Plaintiffs identified a photograph in the record that depicts the Par 3 Course directly behind The Manor Homes gate, which CE Owner did not dispute.

[2] Larger lots and lots with creek views also received a site premium.

[3] The Manor Homes development was initially named "The Executive Estates" prior to its name change.

Barrow County Superior Court records, and the area where the Par 3 Course is located on the plat is labeled "Fountainhead Development, Inc. (Golf Course)."[4] Fountainhead also executed and recorded a "Declaration of Covenants, Conditions and Restrictions" in Barrow County and Gwinnett County for The Manor Homes properties that burdened each property with easements for golf activities for the golf course adjacent to the property.

Ben Harrison, a real estate agent for Chateau Elan Realty, was tasked with meeting with prospective buyers visiting the property and giving them a presentation of the property along with a kit of information that provided an overview of the community and the different floorplans available for construction. According to Harrison, Fountainhead began the construction and development of the Par 3 Course at the time he started working for Chateau Elan in 1993. When meeting with prospective buyers, Harrison said that he did not tell them where a golf course might be located in the future, but he would instead stand on the lots with prospects looking at existing views of the golf course. In 1996, Harrison met with John and Evelyn

_____

[4] Donald Rex Jones, the surveyor who prepared the final plat for The Manor Homes subdivision, averred that, in preparing the final plat for the subdivision, the area where the Par 3 Course is located was to be used for a golf course and he made that notation on the final plat.

4

McCarthy about The Manor Homes development, and he gave them the master site plan and the marketing brochure for the community, both of which indicated that certain lots overlooked the Par 3 Course. Later that same year, John McCarthy purchased lot 4 at The Manor Homes because it was adjacent to the Par 3 Course, which he and his wife intended to use, and because it had a view of the golf course from the back of the property. According to Harrison, lot 4 was the only lot that the McCarthys desired to purchase, and a $15,000 site premium was included in the contract price because of the lot's proximity to, and view of, the golf course. The deed described the property by reference to the lot and the recorded subdivision plat, it included a map of the subdivision which depicted a golf course, and was recorded in the Gwinnett County real estate records. After moving onto the property, the McCarthys often played golf on the Par 3 Course, and they received a discount card from Fountainhead to use for the Par 3 Course. According to Evelyn McCarthy, The Manor Homes was presented to her and John McCarthy as a golf community next to the Par 3 Course, and she and her husband relied upon that representation when deciding to purchase their property. Title to the property later transferred to Evelyn McCarthy after John McCarthy passed away in 2008.

5

Harrison also met with Thomas and Connie Holland in 1996, who were interested in purchasing property at The Manor Homes because they wanted to live in a golf course community. Harrison gave the Hollands the marketing brochure and the Master Plan, and the Hollands ultimately purchased lot 10 at The Manor Homes because they believed that they were purchasing a lot in a golf course community. Specifically, according to Thomas Holland, Harrison and a Fountainhead executive presented The Manor Homes as a golf course community adjacent to the Par 3 golf course. Thomas Holland explained that the Par 3 Course was vital to the concept of the development, that he and his wife were drawn to the development because of the Par 3 Course, and that he and his wife would not have purchased property at the development without the Par 3 Course. Thomas Holland also averred that he and his wife paid a $15,000 site premium for their lot and that the site premium was "in significant part" due to the lot's proximity to the Par 3 Course.

Fountainhead later transferred title to the Par 3 Course to Chateau Elan Resorts, LLC, which in turn transferred the title to CE Owner. According to CE Owner, the company spends more money operating the Par 3 Course each year than it receives in revenue for the golf course. For example, in 2019, CE Owner's expenses for operating the Par 3 Course exceeded its revenue by $74,000. Because of its financial

6

losses, CE Owner sought to close the Par 3 course and develop it for new residential construction. To effect this plan, CE Owner applied for a rezoning of the property with the City of Braselton and the city granted the application in 2019.

The Plaintiffs filed suit against Chateau Elan Resorts, LLC and CE Owner, seeking injunctive relief, a declaratory judgment, and attorney fees under OCGA § 13-6-11.[5] CE Owner subsequently filed a motion for summary judgment, arguing that, as the owner of the land, it has the right to use the land for any lawful purpose and that there was no legal basis to grant an injunction. It also argued that the Plaintiffs were not entitled to a declaratory judgment because (1) a declaratory judgment cannot compel a party to undertake any action; (2) there was no express easement or restrictive covenant that required the property to be operated and maintained as a golf course; and (3) there was no implied easement or restriction that required the property to be operated and maintained as a golf course. The Plaintiffs also filed a motion for summary judgment, arguing that an implied easement existed which restricted the property from being used for any purpose other than a golf course. Following a hearing, the trial court denied CE Owner's motion for summary judgment and granted

_____

[5] The trial court later granted the Plaintiffs' consent motion to dismiss the action against Chateau Elan Resorts, LLC.

7

the Plaintiffs' motion for summary judgment as well as their request for an injunction. In granting summary judgment, the trial court determined that the Plaintiffs acquired an implied easement in the Par 3 Course because it was set apart for the Plaintiffs' use and the Plaintiffs paid site premiums in connection with the purchases of their lots for the Par 3 Course. The Court also determined that the Plaintiffs acquired an implied easement because Fountainhead made oral assurances or representations to the Plaintiffs that the Par 3 Course would be used as a golf course. This appeal followed.

1. First, CE Owner argues that the trial court erred in its determination that the Plaintiffs acquired an implied easement for the Par 3 Course that restricts the land from being used for any purpose other than a golf course. After a close review of the record, we disagree and conclude that the trial court did not err in its determination that the Plaintiffs acquired an implied easement in the Par 3 Course.

We begin our analysis by first noting that "[g]enerally, a landowner has the right to use his land for any lawful purpose, and any restrictions on the use of the land must be clearly established and strictly construed." (Citation and punctuation omitted.) *Westpark Walk Owners, LLC v. Stewart Holdings, LLC*, 288 Ga. App. 633, 636 (2) (655 SE2d 254) (2007). Thus, "[l]imitations on use of land by implication are not favored. . . ." (Citation omitted.) *Peck v. Lanier Golf Club, Inc.*, 315 Ga. App.

8

176, 179 (726 SE2d 442) (2012). Nevertheless, we have held that "parties may take actions from which courts will imply an agreement to restrict the uses allowed upon a tract of land." (Citation and punctuation omitted.) Id. at 179 (a). Therefore, to prevail on their claim that they acquired an implied easement in the Par 3 Course that restricts the property from being used for any purpose other than a golf course,

> [the Plaintiffs] needed to show that [they] purchased [their] lot[s] according to a recorded subdivision plat which had the golf course area designated on it and that [they] paid more for [their] golf course lot[s]. Alternatively, [the Plaintiffs] could establish [their] claim by showing that the developers made oral assurances or representations that the golf course would remain on the property and that [they] relied upon those assurances in deciding to purchase [their] lot[s].

Id. at 179. Under the first method, the "common grantor" method,

> it is well-established that where a developer sells lots according to a recorded plat, the grantees acquire an easement in any areas set apart for their use. An easement acquired in this manner is considered an express grant, and is an irrevocable property right. The rationale is that the grantees of the property have given consideration for its enhanced value in the increased price of their lots.

9

(Citation omitted.) *Peck*, supra, 315 Ga. App. at 179-180 (a). "The standard of proof of a restrictive covenant by implication is only evidence that is clear and beyond a reasonable doubt." Id. at 179.

The facts of this case are analogous to those in *Forsyth County v. Martin*, 279 Ga. 215 (610 SE2d 512) (2005). The issue before the Court in that case concerned the property interests of lakefront property owners in relation to an earthen dam within the residential community that was built to create a 21-acre lake. Id. at 215. The developer constructed residential homesites bordering the lake that were sold pursuant to a recorded plat that depicted the lake area. Id. Forsyth County was directed to determine whether it would breach or repair the dam due to concerns that the dam was in danger of complete failure. Id. at 215-216. The lakefront property owners filed suit against the County and sought a declaratory judgment that the county owned the dam and was responsible for its maintenance and repair. Id. at 216. In affirming the trial court's directed verdict against the County, the Supreme Court of Georgia determined that the lakefront property owners acquired an irrevocable easement in the lake. Id. at 217 (1). The Court reasoned that the property owners purchased their lots according to a recorded subdivision plat that showed the lake area and that the property owners paid more for their lakefront lots, thereby acquiring

10

an irrevocable easement in the lake. Id. Thus, the Court concluded that "[t]he homeowners' interest in the lake limited the legal ability of the County, as owner of the dam . . . to breach the dam." Id.

Here, the record shows that the Plaintiffs purchased their lots from Fountainhead according to a recorded subdivision plat that depicted the Par 3 Course, which Fountainhead also owned at the time of the purchases, adjacent to The Manor Homes. The record is also clear that John McCarthy paid a $15,000 site premium for his lot due to its proximity to the Par 3 Course, and that the Hollands were charged a $15,000 site premium "in significant part" due to their lot's proximity to the Par 3 Course, which CE Owner now seeks to redevelop into residential property.

Applying *Forsyth County* to the instant case, we conclude that the trial court correctly determined that the Plaintiffs acquired an implied easement in the Par 3 Course under the common grantor method. As in *Forsyth County*, the record here is clear that the Plaintiffs purchased their lots according to a recorded subdivision plat that depicted the Par 3 Course adjacent to The Manor Homes subdivision. Cf. *Peck*, supra, 315 Ga. App. at 180 (a) (holding that the plaintiff's claim of an implied easement for a golf course located near his property failed where the plaintiff failed to establish that he purchased his property pursuant to a recorded subdivision plat).

11

The record is also clear that John McCarthy and the Hollands each paid a $15,000 site premium because of their lots proximity to the Par 3 Course. Therefore, the trial court did not err in its determination that the Plaintiffs acquired an irrevocable easement in the Par 3 Course. See *Forsyth County*, supra, 279 Ga. at 217 (1) (holding that the lakefront property owners acquired an irrevocable easement in the lake because they purchased their property pursuant to a recorded subdivision plat that depicted the lake, and they paid more for their lots than non-lakefront lots); *Higgins v. Odom*, 246 Ga. 309 (271 SE2d 211) (1980) (holding that the lakefront-lot owner acquired an easement to the lake that could not be interfered with because the owner purchased their property according to a subdivision plat which had a lake area designated on the plat).

The dissent contends that a genuine issue of fact remains as to whether the Plaintiffs acquired an implied easement to the Par 3 Course because Donald Jones, the surveyor, averred that he "was not requested to and did not note any easement for future lot owners" for The Manor Homes, and that he did not include the Par 3 Course as part of The Manor Homes. This contention, however, is without merit. This case involves the issue of whether an *implied* easement exists, not an express easement, and so the Plaintiffs' claim rests on whether the parties took certain actions from

12

which a court could imply the existence of an easement that has *not* been expressly set out. *Peck*, supra, 315 Ga. App. at 179. As stated above, the record is clear that the Plaintiffs purchased their properties from a common grantor pursuant to a recorded subdivision plat that depicted the Par 3 Course adjacent to their subdivision and that they paid more for their properties because of its proximity to the Par 3 Course. Thus, consistent with the Supreme Court of Georgia's *Forsyth County* decision, the Plaintiffs acquired an implied easement to the Par 3 Course.[6]

CE Owner asserts a variety of claims to support its position that the trial court erred in its determination that the Plaintiffs acquired an implied easement to the Par 3 Course under the common grantor method. None of its arguments, however, have

---

[6] Additionally, the dissent's attempt to distinguish the *Forsyth County* decision on the basis that Par 3 Course was not "designated" on the subdivision plat is meritless. The dissent fails to explain what is required for a valid "designation," nor does it explain why the recorded subdivision plat which shows the Par 3 Course is insufficient to constitute a designation. This is particularly so, given that in its recitation of the facts, the Supreme Court of Georgia stated that the developer sold homesites "pursuant to a subdivision plat *showing* the lake area." (Emphasis supplied.) *Forsyth County*, supra, 279 Ga. at 215. Additionally, to the extent that the dissent contends that the issue in *Forsyth County* was not the same as the issue presented in this case, we note that in order for the Supreme Court of Georgia to decide the ultimate issue in that case, it first had to decide whether the property owners acquired an implied easement to the lake. Id. at 217-218 (1). Accordingly, the dissent's assertions regarding *Forsyth County*'s application to this case are mere distinctions without any meaningful difference.

13

any merit. First, CE Owner argues that Evelyn McCarthy cannot prevail under the common grantor method because she obtained title to the property from her husband's passing and therefore did not purchase property from a common grantor. We disagree. In *Bishop Eddie Long Ministries, Inc. v. Dillard*, 272 Ga. App. 894 (613 SE2d 673) (2005), the issue on appeal concerned the property owners' easement rights in relation to a lake. Id. at 894. In analyzing the easement rights of the parties, we applied the common grantor method principles and concluded that because the purchaser bought his property from the lake owner pursuant to a recorded plat that depicted the lake, the purchaser acquired an irrevocable easement in the lake. Id. at 898 (1). We further concluded that, because Bishop Eddie Long Ministries later acquired title to the property, it also acquired an irrevocable easement to the lake. Id.

Here, as stated above, we conclude that John McCarthy acquired an irrevocable easement in the Par 3 Course because he purchased his lot pursuant to a recorded subdivision plat that depicted the Par 3 Course adjacent to The Manor Homes, and he paid a $15,000 site premium because of the lot's proximity to the Par 3 Course. Because Evelyn McCarthy later obtained title to the property as a result of her husband's passing, under *Bishop Eddie Long Ministries, Inc.*, Evelyn McCarthy

14

likewise acquired an irrevocable easement in the Par 3 Course when she obtained title to the property. Thus, CE Owner's claim to the contrary fails.

Second, CE Owner argues that the Plaintiffs did not acquire an implied easement for the Par 3 Course because the golf course was not a part of The Manor Homes but was instead "outside and separate from the residential subdivision." The fact that the Par 3 Course is not located in the center of The Manor Homes, however, is irrelevant. Notably, as stated above, the Supreme Court of Georgia in *Forsyth County* held that the trial court properly directed a verdict in favor of the property owners because the evidence showed that the plaintiffs' properties were *adjacent* to, and bordered, the lake, and the plaintiffs paid more for their properties because of their proximity to the lake. *Forsyth*, supra, 279 Ga. at 218 (1). Thus, applying *Forsyth County* to the case at bar, it is sufficient under the common grantor method that the Plaintiffs' properties are located adjacent to the Par 3 Course. Indeed, the plat clearly shows that the properties abut the Par 3 Course. Also, as previously stated, the properties at The Manor Homes subdivision are burdened with covenants requiring the property owners to allow golfers to enter their properties for golf activities for the Par 3 Course. Hence, this is clearly not a situation where The Manor Homes and the Par 3 Course are separate entities. Consequently, any argument that the Plaintiffs did

15

not acquire an implied easement to the Par 3 Course because the golf course was adjacent and not "within" The Manor Homes subdivision fails.

Next, CE Owner argues that the description of the Par 3 Course on the subdivision plat was insufficient to establish an implied easement. We disagree, however, because the plat sufficiently described the Par 3 Course and the caselaw relied upon by CE Owner in support of its claim does not compel a different result.

It is true that

> [a]lthough the law does not require legal perfection in the description of an easement, the description must be sufficiently full and definite to afford means of identification. While it is not necessary that the instrument should embody a minute or perfectly accurate description of the land, yet it must furnish the key to the identification of the land intended to be conveyed by the grantor. If the premises are so referred to as to indicate the grantor's intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable.

(Citations, punctuation, and emphasis omitted.) *Plantation at Bay Creek Homeowners Assn., Inc. v. Glasier*, 349 Ga. App. 203, 207 (1) (825 SE2d 542) (2019).

16

Nevertheless, "[w]e have held that even a vague description will suffice if by competent parol evidence its precise location is capable of ascertainment and its identity can thus be established. Whether the property's description is legally sufficient is a question of law for the court." (Citations and punctuation omitted.) *Kay v. W. B. Anderson Feed & Poultry Co., Inc.*, 278 Ga. App. 674, 675 (629 SE2d 408) (2006).

Here, the recorded plat that was incorporated into the Hollands' deed designates the area adjacent to The Manor Homes as "FOUNTAINHEAD DEVELOPMENT, INC. (Golf Course)" We conclude that this description provided a key for the precise identification of the land subject to an easement, such that extrinsic evidence was admissible to determine the easement's exact location. See *Sharpe v. Savannah River Lumber Corp.*, 211 Ga. 570, 571-572 (2) (87 SE2d 398) (1955) (holding that the words "swamp land" in a deed furnished a key to the identification of the property intended to be conveyed). Here, extrinsic evidence of a recorded composite plat for Chateau Elan clearly depicts the Par 3 Course adjacent to The Manor Homes, and shows the golf course parallel to State Route 211, perpendicular to Interstate 85, and beginning at lot 1 of The Manor Homes and

17

ending at lot 13 in the County Estates area.[7] In light of this evidence, CE Owner's claim that the phrase FOUNTAINHEAD DEVELOPMENT, INC. (Golf Course) was insufficient fails, particularly since "there is no evidence that the parties were confused" about the location of Par 3 Course. *Kay*, supra, 278 Ga. App. at 675 (holding that the language in the contract purporting to sell "the rear half of the property" was sufficient where extrinsic evidence showed that only one side of the property fronted a road and there was no evidence indicating that the parties were confused about which portion of the property was to be conveyed).

CE Owner relies upon a number of decisions in support of its claim that the Par 3 Course was not sufficiently described, but none of the decisions compel a reversal of the trial court's order. In *Eardley v. McGreevy*, 279 Ga. 562, 563-564 (1) (615 SE2d 744) (2005), the Supreme Court of Georgia held that a landowner did not have an implied easement in a drive area because the plat depicting the drive area was neither recorded nor referenced in the landowner's deed, and the plat failed to

---

[7] We reject CE Owner's claim that the composite plat was not relevant to the Hollands' claim of an implied easement because the plat was executed years after they purchased their property. The fact that Fountainhead later executed another plat that depicted the Par 3 Course in the exact same location that was depicted on the plat attached to the Hollands' deed adds more support to the Hollands' claim that Fountainhead intended that The Manor Homes subdivision was to be a golf course community.

describe the drive area as a right of way for the landowner's property. Id. at 564 (1).

In this case, by contrast, the subdivision plat was recorded, it was referenced in the Plaintiffs' closing documents, and the plat depicted the Par 3 Course adjacent to The Manor Homes. In *Miller v. Slater*, 182 Ga. 552, 556-557 (1) (186 SE 413) (1936), the Supreme Court of Georgia determined that the phrase "Cement Driveway" did not sufficiently describe the property alleged to be subject to an easement because the phrase appeared on one person's particular tract of property and thus it could not be said that the cement driveway was for any other person's use. Here, however, there is no evidence in the record that the Par 3 Course was only for any one particular owner's use. In *Glasier*, supra, 349 Ga. App. at 208 (1), we held that the phrase "10' PEDESTRIAN ESMT" was an insufficient description of the purported easement because there were no lines or arrows connecting the phrase to the plat, it was unclear whether "10'" applied to the length or width of the easement, there was no evidence in the record to show exactly where the intended easement would eventually be located, and there was uncontradicted evidence in the record that the phrase "10' PEDESTRIAN ESMT" on the plat was an error and was not supposed to be included in the plat. Here, the location of the golf course was clearly indicated in the plat, and its inclusion in the plat was not a mistake. Finally, in *Peck*, supra, 315 Ga. App. at

19

180-181 (a), we held that the property owner could not establish his claim of an implied easement to a golf course, partly because the unrecorded plat relied upon by the landowner was merely a tentative unapproved plat and the plat that was attached to the landowner's closing documents did not depict the golf course on the subdivision plat. But once again, the plat in this case depicted the Par 3 Course next to The Manor Homes, and the plat was recorded and referenced in the Plaintiffs' closing documents. Thus, none of the decisions relied upon by CE Owner compel a reversal of the trial court's order in this case, and its claim that the subdivision plat did not sufficiently describe the golf course fails.[8]

CE Owner also argues that the Plaintiffs cannot prevail under the common grantor method because they cannot show that the Par 3 Course was set apart for their use. In making this argument, CE Owner relies on two prior decisions from this

---

[8] To the extent that the dissent contends that the subdivision plat fails to properly designate the Par 3 Course on the recorded plat because it fails to set out the bearings of all the lines of the boundary or the lot lines of the golf course, we reject this contention for the reasons stated above. Additionally, the dissent's attempt to distinguish *Kay* from this case on the basis that the issue there involved a contract for the sale of land, is a distinction without a meaningful difference. Moreover, unlike the decision relied upon by the dissent, *Higginbotham v. Knight*, 312 Ga. App. 525 (719 SE2d 1) (2011), this case does not involve a situation where the parties are confused about the location of the easement, and thus *Higginbotham* does not provide a basis for reversal of the trial court's order.

Court, *Camp Cherokee, Inc. v. Marina Lane, LLC*, 316 Ga. App. 366 (729 SE2d 510) (2012), and *de Castro v. Durrell*, 295 Ga. App. 194 (671 SE2d 244) (2008), but those cases are factually distinguishable and do not compel a reversal of the trial court's summary judgment order in this case.

In *Camp Cherokee, Inc.*, we held that the landowners failed to establish that they acquired an implied easement in a lake located near the subdivision in part because the landowners failed to show that the lake was set apart for their use. *Camp Cherokee, Inc.*, supra, 316 Ga. App. at 369-370 (1). We reasoned that the advertisements that the landowners relied upon was only for lots that abutted the lake in different sections of the subdivision and that the landowners' lots were located in a different section and did not abut the lake. Id. We further reasoned that there was no evidence that the landowners relied upon the advertisements when they purchased their properties. Id. at 370 (1). In *de Castro*, we determined that the landowners failed to establish their claim of an implied easement in a soccer field located in their subdivision. *de Castro*, supra, 295 Ga. App. at 199-202 (2) (a). We based our holding on the fact that the words "Recreation Area Soccer Field" were erased from the subdivision plat before it was recorded, and therefore it could not be said that there

21

was an intention on the part of the original land owner to create a recreational soccer area. Id.

Here, unlike *Camp Cherokee, Inc.*, the marketing materials for Chateu Elan expressly stated that The Manor Homes subdivision was being developed to overlook the Par 3 Course and that the landowners would have the ability to "choose" between using the Par 3 Course or the other golf courses in the community. Also, unlike the landowners in *Camp Cherokee, Inc.*, the Plaintiffs testified that they relied upon these representations made by Fountainhead in purchasing their properties. Moreover, unlike the landowners in *de Castro*, the words "Fountainhead Development Inc. (Golf Course)" were not erased from the Plaintiffs' subdivision plat before it was recorded, which evinces an intent on the part of Fountainhead to create a golf course adjacent to The Manor Homes subdivision, which Fountainhead did, in fact, create next to The Manor Homes subdivision. Accordingly, unlike in *Camp Cherokee, Inc*. and *de Castro*, the record in this case contains evidence that the Par 3 Course was set apart for the Plaintiffs' use, and CE Owner's claim to the contrary fails.

Lastly, CE Owner argues that the Plaintiffs cannot prevail under the common grantor method because they failed to establish that they paid more for their lots because of their proximity to the Par 3 Course. We disagree. As stated above, the

record is clear that John McCarthy paid a $15,000 site premium because of the lot's proximity to the Par 3 Course and Thomas Holland averred that he paid a $15,000 site premium for his lot "in significant part" due to its proximity to the Par 3 Course. Although CE Owner attempts to point to other evidence in the record to speculate why the Hollands were assessed the $15,000 site premium, CE Owner fails to rebut the evidence in the record that the $15,000 site premium charged to the Hollands was not at least "*in significant part*" due to their lot's proximity to the Par 3 Course. Accordingly, for all of the reasons stated above, the trial court did not err in its determination that the Plaintiffs acquired an implied easement in the Par 3 Course under the common grantor method that limits CE Owner's ability to interfere with their property interest in the Par 3 Course.[9]

2. Next, CE Owner argues that the trial court's declaratory judgment violates OCGA § 9-11-65 because (1) the order does not sufficiently describe the property that is subject to the easement; (2) the order does not sufficiently describe the acts to be restrained; and (3) a declaratory judgment cannot be used to compel a defendant to

---

[9] In light of this disposition, it is unnecessary to address CE Owner's claim that the Plaintiffs did not acquire an implied easement in the Par 3 Course under the oral assurances method.

act. We disagree with CE Owner and conclude that all of these arguments are without merit.

(a) First, as to CE Owner's claim that the order is unenforceable because it does not sufficiently describe the property that is subject to the easement,

> OCGA § 9-11-65 (d) requires that every order granting an injunction shall be specific in terms and shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. If on its face the written order does not specifically describe the property which is the subject of the injunction, the order is invalid. A legal description of the property is not required, but simply a reasonable description that specifically identifies the property and specifies the act restrained.

(Citations and punctuation omitted.) *Kace Investments, L. P. v. Hull*, 263 Ga. App. 296, 301 (3) (587 SE2d 800) (2003).

Here, at the beginning of its summary judgment order, the trial court described the Par 3 Course as a golf course that is located in the Chateau Elan development in Braselton, Georgia, adjacent to The Manor Homes subdivision inside the Chateau Elan development on Fleurie Lane. Although the trial court noted in its order that the Chateau Elan development contains three golf courses, the order also noted that the Par 3 Course was the golf course located adjacent to The Manor Homes subdivision.

24

In granting the Plaintiffs' request for an injunction, the trial court's order states: "The [c]ourt further finds and declares that the Defendant is bound by the easement and is obligated to continue the use of the property as a Par 3 Course in the same manner as it has existed for over 25 years. The Plaintiffs are also entitled to a permanent injunction preventing the Par 3 Course from being put to any other use."

We conclude that the trial court's order sufficiently described the property subject to the injunction. As shown above, the order states that the Par 3 Course is located adjacent to The Manor Homes subdivision on Fleurie Lane inside the Chateau Elan development in Braselton, Georgia. Additionally, although the development has three golf courses, the order states that the Par 3 Course is the golf course located adjacent to The Manor Homes. Accordingly, CE Owner's claim that the injunction does not sufficiently describe the property fails. See *Kace Investments, L.P.*, supra, 263 Ga. App. at 301-302 (3) (holding that the trial court sufficiently described the property subject to an injunction where the order stated the county and street location of the property and that the property was located behind a particular building).

(b) Next, as to CE Owner's claim that the order does not sufficiently describe the acts to be restrained, as stated above, OCGA § 9-11-65 (d) also requires that an order granting an injunction specify the acts to be restrained. "But the statutory

25

requirement is not that the injunction be so detailed as to cover every possible development, but that it be in reasonable detail." (Punctuation omitted.) *Bearden v. Ga. Power Co.*, 262 Ga. App. 550, 553 (3) (586 SE2d 10) (2003).

In this case, the order states that CE Owner "is obligated to continue the use of the property as a Par 3 Course in the same manner as it has existed for over 25 years[,]" and that CE Owner was prohibited from using the Par 3 Course for any use other than a golf course. In light of this language, we conclude that the injunction sufficiently described the acts to be restrained. The order states that CE Owner is obligated to continue to operate the Par 3 Course as a golf course and that it is prohibited from using the property for anything other than a golf course, and thus it sufficiently describes the acts to be restrained in accordance with OCGA § 9-11-65 (d). See *Bearden*, supra, 262 Ga. App. at 553 (3) (holding that the trial court's order enjoining the property owners from interfering with a company's rights to survey, inspect, and appraise the property sufficiently described the acts to be restrained in

26

accordance with OCGA § 9-11-65 (d)).[10] Therefore, CE Owner's claim that the order is unenforceable for failing to describe the acts to be restrained fails.

(c) Lastly, regarding CE Owner's claim that the declaratory judgment improperly compels it to act, it is true that

> Georgia's Declaratory Judgment Act gives superior courts the power to declare rights and other legal relations of any interested party in cases of actual controversy and in any civil case in which it appears to the court that the ends of justice require that the declaration should be made. The distinctive characteristic of a declaratory judgment is that the declaration stands by itself and does not seek execution or performance by the defendant. Thus, the proper scope of declaratory judgment is to adjudge those rights among parties upon which their future conduct depends. And any relief, if granted, must be fashioned as simply a declaration of rights that requires no action on the part of the defendant or anyone else.

(Citations, punctuation, and emphasis omitted.) *Georgia Cas. & Surety Co., v. Valley Wood, Inc.*, 345 Ga. App. 30, 32-33 (1) (812 SE2d 94) (2018).

---

[10] CE Owner's reliance on *Sanford v. RDA Consultants, Ltd.*, 244 Ga. App. 308 (535 SE2d 321) (2000), is misplaced. There, we declared a portion of an injunction invalid for violating OCGA § 9-11-65 (d) because the order prohibited a former employee from using "improper means to interfere with business opportunities" of his former employer, but the order failed to define what behavior constituted "improper means." Id. at 312 (4) (a). The order in this case, by contrast, contains no such vague language.

Here, in granting the Plaintiffs declaratory relief, the trial court's order stated:

The [c]ourt finds and declares that the Plaintiffs acquired an implied irrevocable easement restricting the Par 3 Course from being put to any other use. The [c]ourt further finds and declares that [CE Owner] is bound by the easement and is obligated to continue the use of the property as a Par 3 Course in the same manner as it has existed for over 25 years.

We conclude that the trial court's order does not violate the Declaratory Judgment Act by compelling CE Owner to act. Although the language of the order states that CE Owner is "obligated to continue the use of the property as a Par 3 Course," the practical effect of the relief simply declares that the Plaintiffs acquired an implied easement in the Par 3 Course that restricts the property from being used for any purpose other than a golf course.[11] See *GeorgiaCarry.org v. Atlanta Botanical Garden, Inc.*, 299 Ga. 26, 30-31 (1) (785 SE2d 874) (2016) (holding that a declaration that the Atlanta Botanical Garden "may not ban" licensed individuals

---

[11] To the extent that CE Owner and the dissent contend that the trial court's order essentially requires CE Owner to operate the Par 3 Course in perpetuity, we recognize, as did the trial court, that property owners have several avenues available to modify or extinguish an easement if they are inclined to do so.

28

from carrying weapons at the facility would not violate the Declaratory Judgment Act because the practical effect of the order is a declaration of the rights on licensed individuals). Accordingly, CE Owner's claim that the trial court's order violates the Declaratory Judgment Act for compelling it to act is meritless,[12] and for the reasons stated above, CE Owner's claims that the trial court's order is unenforceable fail.

3. Finally, CE Owner argues that the trial court erred by awarding the Plaintiffs $25,805.23 in attorney fees under OCGA § 13-6-11 and OCGA § 9-15-14 (b). We agree because the trial court could not grant summary judgment to the Plaintiffs on their attorney fees claim under OCGA § 13-6-11, and it did not provide the requisite notice that it was considering a sua sponte award of attorney fees under OCGA § 9-15-14 (b).

*(a) Attorney Fees Under OCGA § 13-6-11*

As to an award of attorney fees under OCGA § 13-6-11, that statute provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where

---

[12] To the extent CE Owner argues that the trial court's order violates the new zoning ordinance, we note that there is no evidence in the record that a new zoning ordinance has been put into place, and that no arguments were made to the trial court below regarding the existence or implementation of new zoning regulations.

29

the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Thus, the plain language of the statute shows that the determination of whether the Defendant has been stubbornly litigious so as to support of an attorney fees award under OCGA § 13-6-11 is an issue solely for the jury's determination.

> Consequently, because both the liability for and amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination, *a trial court is not authorized to grant summary judgment in favor of a claimant* therefor. Although the trial court may grant attorney fees or litigation expenses under OCGA § 13-6-11 where it sits as the trier of fact, it is not a trier of fact on a motion for summary judgment.

(Citations and punctuation omitted; Emphasis supplied.) *Caldwell v. Church*, 341 Ga. App. 852, 858-859 (2) (c) (802 SE2d 835) (2017).

Here, the trial court ruled that the Plaintiffs were entitled to summary judgment on their claim for attorney fees under OCGA § 13-6-11 because CE Owner engaged in "stubbornly litigious conduct in pursuing the rezoning of the golf course . . . in order to sell it as a subdivision. . . ." Because this matter was before the trial court in a motion for summary judgment, however, the trial court did not sit as a trier of fact, and therefore it could not grant summary judgment to the Plaintiffs on their claim for

attorney fees. See *Covington Square Assoc., LLC v. Ingles Markets, Inc.*, 287 Ga. 445, 447-448 (696 SE2d 649) (2010) (holding that the trial court erred by granting summary judgment in favor of the Plaintiff on its claim for attorney fees under OCGA § 13-6-11 because the trial court was not a trier of fact in adjudicating a motion for summary judgment). Consequently, the trial court erred by granting the Plaintiffs summary judgment on their claim for attorney fees under OCGA § 13-6-11.

*(b) Attorney Fees Under OCGA § 9-15-14 (b)*

As to an award of attorney fees under OCGA § 9-15-14 (b):

[T]he plain language of OCGA § 9-15-14 (b) authorizes the assessment of attorney fees upon the motion of any party or the court itself against an attorney or party who the court determines, in its discretion, pursues an action lacking substantial justification or engages in improper conduct that unnecessarily expands the proceedings. *Any person against whom fees are being considered under this statute must be given notice and an opportunity to challenge the imposition of an award*.

(Emphasis supplied.) *Ettrick v. SunTrust Mtg., Inc.*, 349 Ga. App. 703, 706 (2) (b) (824 SE2d 727) (2019).

Here, the trial court also determined that CE Owner was liable for attorney fees under OCGA § 9-15-14 (b) "for defending its actions despite their lacking substantial justification. . . ." The Plaintiffs, however, only asserted a claim for attorney fees

31

under OCGA § 13-6-11, and at no point did they argue that CE Owner's litigation position "lacked substantial justification" or that CE Owner "unnecessarily expanded the proceedings." Although the plain language of OCGA § 9-15-14 (b) authorizes a trial court to award attorney fees sua sponte, there is no evidence in the record to show that the trial court provided the requisite notice to CE Owner that it would consider an award for attorney fees under this statute, either before, during, or after the summary judgment hearing.[13] Because the trial court did not provide CE Owner with notice that it would consider awarding attorney fees under OCGA § 9-15-14 (b), the trial court erred in awarding attorney fees to the Plaintiffs on this basis. See *Wall v. Thurman*, 283 Ga. 533, 534 (3) (661 SE2d 549) (2008) (holding that the trial court erred by awarding attorney fees under OCGA § 9-15-14 (b) where the record showed that the trial court did not provide notice that it would consider awarding attorney fees under that statute).

Accordingly, we affirm the trial court's order determining that the Plaintiffs acquired an implied easement in the golf course and issuing an injunction, but we

---

[13] Although the Plaintiffs argue that the issue concerning their claim for attorney fees was argued at the hearing on the motions for summary judgment, there was no discussion at the hearing that attorney fees were being sought under any particular statute.

32

reverse the trial court's order granting summary judgment to the Plaintiffs on their attorney fees claim.

*Judgment affirmed in part and reversed in part. Pipkin, J., concurs. Hodges, J., concurs as to Division 3, but dissents as to Divisions 1 and 2.*

A21A0329. WS CE RESORT OWNER, LLC v. HOLLAND et al.

HODGES, Judge, concurring in part and dissenting in part.

I respectfully dissent to the majority's affirmance of the grant of summary judgment and a permanent injunction to the Plaintiffs in Divisions 1 and 2. Because of my reasoning in Division 1, I need not address Division 2 further. I concur in Division 3.

1. It is my opinion that, in its analysis of the status of the Par 3 Course, the majority does not view the facts in the light most favorable to CE Owner, the non-moving party, as required by our summary judgment standard.

The primary question presented by this case is whether the Plaintiffs have an implied easement in the Par 3 Course.

As the majority notes, where "there were no existing express restrictions mandating that [CE Owner's] property be maintained as a golf course, to prevail on

[their] claim, [the Plaintiffs] needed to show that [they] purchased [their] lots *according to a recorded subdivision plat which had the golf course area designated on it* and that [they] paid more for [their] golf course lots." *Peck v. Lanier Golf Club, Inc*., 315 Ga. App. 176, 179 (726 SE2d 442) (2012). The *Peck* Court, however found that the plaintiff's claim of an implied easement in a golf course located near his property failed because the plaintiff failed to establish that he purchased the property pursuant to a recorded subdivision plat. Id. at 180 (a).

Here, there is no question that the Plaintiffs purchased their properties pursuant to a recorded subdivision plat. The question is whether that plat has "the golf course area designated on it," *Peck*, 315 Ga. App. at 179, as such a designation is crucial to any analysis under *Peck*'s common grantor method.

"Generally, extrinsic evidence cannot be used to contradict an owner's express intent to dedicate land. However, when a plat is ambiguous, parol evidence, the surrounding circumstances, and the subsequent conduct of the public, can be used to show the boundaries and extent of a dedication." *Cobb County v. Crew*, 267 Ga. 525, 527 (1) (481 SE2d 806) (1997).

Here, there is no express intent by CE Owner to dedicate land, and there is a plat which CE Owner argues does not "designate" the golf course on it, but only

refers to the golf course as an adjacent property. In examining whether the Plaintiffs have succeeded under the common grantor method, which necessarily involves a consideration of the plat, the majority rests its conclusion upon some, but not all, of the available extrinsic evidence in this case. Its consideration includes the Master Plan and other marketing materials for Chateau Elan; a photograph, referenced at oral argument and contained in the appellate record, which depicts the Par 3 Course behind The Manor Homes' gate; the "Declaration of Covenants, Conditions and Restrictions" burdening each property with golf-related easements; statements from the Chateau Elan Realty real estate agent who met with the Plaintiffs when they were prospective buyers, and a later-recorded composite plat; and, briefly, the affidavit of the surveyor, Donald Rex Jones, who created the plat.

This latter piece of evidence is favorable to CE Owner as the non-movant. Jones prepared the plat for The Manor Homes subdivision in May of 1995, prior to the Plaintiffs' purchases of their properties. In his affidavit, Jones averred that this was the "final subdivision Plat for Executive Estates – Block 'A.'" He further stated that, "The golf course property *was not surveyed as part of the Subdivision Plat. . . . I did *not include nor did I intend to include the property used as the golf course as*

3

*part of the Subdivision Plat*."[1] Instead, he identifies the golf course only as "adjacent" property.[2] (Emphasis supplied.)

We note that the surveyor would have been required to show the "character" and evidence of possession of properties along the adjacent or "related" boundary lines. See GA. COMP. R. & REGS. 180-7-.07 (d) (14) (16), providing that, as part of their "[r]equired [c]ontent:"

---

[1] Contrary to the majority's characterization in Division 1 that this dissent argues that the surveyor "was not requested to and did not note any easement for future lot owners," this dissent has never stated that. Rather, this dissent recognizes the fact that the surveyor's affidavit states that he "did not include . . . the property used as the golf course as part of the Subdivision Plat."

[2] The majority's citation to *Forsyth County v. Martin*, 279 Ga. 215 (610 SE2d 512) (2005) is distinguishable. Indeed, *Forsyth County* provides a general statement, with no related analysis, that "plaintiffs established they purchased their lots according to a subdivision plat which had a lake area *designated on it* and paid more for their lakefront lots than the purchase price for non-lakefront lots, thereby acquiring an irrevocable easement in the lake." (Emphasis supplied.) Id. at 217. Accord *Peck*, 315 Ga. App. at 179. However, unlike in the instant case, there appears to have been no issue in *Forsyth County* regarding whether the plat was ambiguous such that a fact question existed regarding whether the lake was "designated on" the plat. In the instant case, the surveyor stated the golf course was not included on the plat. As *Forsyth County* defines its own *raison d'etre*, "the issue presented was what effect the plaintiff's ownership of property adjacent to the lake formed by the dam had on whether to repair or breach the dam, as required by the [Environmental Protection Division] order." Id. Such is not an issue in the instant case.

4

All maps or plats … shall show the following information, as specified: . . . 14. The names of adjacent property owners on all lines…; 16. The character of any and all evidence of possession along or related to boundary lines clearly depicted and stated… .

To that end, Jones identifies three adjacent properties as being noted on the plat by the words "Fountainhead Development, Inc.[,]" followed by, variously "Golf Course," "Country Estates," and "Future Development." While the Plaintiff's Lots 4 and 10 are depicted on the plat with measurements and acreage noted and surrounded by an external boundary line also containing measurements, the "Golf Course," "Country Estates," and "Future Development" demarcations all appear outside those bounds and contain no measurement or boundary delineations. GA. COMP. R. & REGS. 180-7-.07 (d) (2) additionally provides, as part of the required content, a showing of:

Bearings of all lines of the boundary or lot lines, and distances of all boundary or lot lines, and area of the parcels expressed in acres or square feet. All bearings, distances, and areas shown on the survey shall be based upon the measurements of the surveyor, except that both the measured and the record measurements may be shown if the surveyor feels that such comparison is necessary or otherwise required[.]

5

As to the golf course, the plat does not show the bearings of "all lines of the boundary or lot lines," nor does it show the acres or square feet.[3]

Because the surveyor's affidavit avers that the golf course was included only as a property "adjacent" to the subdivision property surveyed, and that he "did not include . . . the property used as the golf course as part of the Subdivision Plat[,]" a fact question exists as to whether the golf course is actually "designated" as part of the recorded plat. See *Peck*, supra. "Although extrinsic evidence properly may be considered to determine the intent of the parties, the extrinsic evidence in this case is disputed and does not resolve for the purposes of summary judgment whether the disputed [golf course] is part of the [plat] of the subdivision." *Higginbotham v. Knight*, 312 Ga. App. 525, 530 (719 SE2d 1) (2011) (finding that neither party was entitled to summary judgment on the issue of whether a disputed pathway was part of the "road system" of a subdivision where, despite a "visual inspection of the plats,"

---

[3] The majority cites to *Kay v. W. B. Anderson Feed and Poultry Co., Inc.*, 278 Ga. App. 674 (629 SE2d 408) (2006) for the proposition that "even a vague description [of an easement] will suffice if by competent parol evidence its precise location is capable of ascertainment and its identity can thus be established." (Citation and punctuation omitted.) Id. at 675. *Kay* deals with a contract for the sale of land, not a plat. To the extent that this case applies to a plat, the issue in the instant case is not, pe se, the precise location of the Par 3 Course. The issue is that, because of the surveyor's affidavit, a fact question exists as to whether the Par 3 Course is "designated" on the plat. See *Peck*, 315 Ga. App. at 179.

the Court "simply cannot ascertain whether the pathway ends at the boundary between the lots or crosses barely over the boundary line.")

Additionally, in light of the extrinsic evidence in this case, I am mindful that under our summary judgment standard, we may not weigh the evidence or determine its credibility. See *Dover v. Mathis*, 249 Ga. App. 753 (249 SE2d 541) (2001). In light of this, I believe that summary judgment is inappropriate, the permanent injunction should not have been upheld, and that this matter is ripe for jury resolution. For the above reasons, I respectfully dissent.